debtor, in the amount of approximately twenty thousand dollars ($20,000), in violation of Title 18, United States Code, Sections 894(a) and 2.

### RACKETEERING ACT 28

The defendant named below committed the following acts relating to the making and collecting of extortionate extensions of credit involving Dominic Santoro, Jr., commission of any one of which alone constitutes the commission of RACKETEERING ACT 28:

(A)   In or about early fall 1999, the exact date being to the Grand Jury unknown, at Boston, in the District of Massachusetts, the defendant,

FRANCIS WHITE, A/K/A, THE WHITE-HAIRED GUY,

did unlawfully and knowingly make an extortionate extension of credit within the meaning of Title 18, United States Code, Section 891(6), to Dominic Santoro, Jr., in the amount of approximately twenty thousand dollars ($20,000), with respect to which it was the understanding of the debtor Dominic Santoro, Jr., and the defendant-creditor at the time the loan was made, that delay in making repayment and failure to make repayment could result in the use of violence and other criminal means to cause harm to the person, reputation, and property of said debtor, in violation of Title 18, United States Code, Sections 892(a) and 2.

(B)   In or about fall 1999, the exact dates being to the Grand Jury unknown, in the District of Massachusetts, the defendant,

30

FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

did unlawfully and knowingly participate in the use of
extortionate means within the meaning of Title 18, United States
Code, Section 891(7), in order to collect and attempt to collect
an extension of credit within the meaning of Title 18, United
States Code, Section 891(1), from Dominic Santoro, Jr., the
debtor, in the amount of approximately twenty thousand dollars
($20,000), in violation of Title 18, United States Code, Sections
894(a) and 2.

### RACKETEERING ACT 29

The defendant named below committed the following acts
relating to the making and collecting of extortionate extensions
of credit involving Dominic Santoro, Jr., commission of any one
of which alone constitutes the commission of RACKETEERING ACT 29:

(A)   In or about fall 2000, the exact date being to the
Grand Jury unknown, at Boston, in the District of Massachusetts,
the defendant,

FRANCIS WHITE, A/K/A, THE WHITE-HAIRED GUY,

did unlawfully and knowingly make an extortionate extension of
credit within the meaning of Title 18, United States Code,
Section 891(6), to Dominic Santoro, Jr., in the amount of
approximately twenty thousand dollars ($20,000), with respect to
which it was the understanding of the debtor Dominic Santoro,
Jr., and the defendant-creditor at the time the loan was made,
that delay in making repayment and failure to make repayment
could result in the use of violence and other criminal means to

31

cause harm to the person, reputation, and property of said debtor, in violation of Title 18, United States Code, Section 892(a).

(B) In or about fall 2000, the exact dates being to the Grand Jury unknown, in the District of Massachusetts, the defendant,

FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

did unlawfully and knowingly participate in the use of extortionate means within the meaning of Title 18, United States Code, Section 891(7), in order to collect and attempt to collect an extension of credit within the meaning of Title 18, United States Code, Section 891(1), from Dominic Santoro, Jr., the debtor, in the amount of approximately twenty thousand dollars ($20,000), in violation of Title 18, United States Code, Sections 894(a) and 2.

## RACKETEERING ACT 30

The defendant named below committed the following acts relating to the making and collecting of extortionate extensions of credit involving Dominic Santoro, Jr., commission of any one of which alone constitutes the commission of RACKETEERING ACT 30:

(A) In or about fall 2001, the exact date being to the Grand Jury unknown, at Boston, in the District of Massachusetts, the defendant,

FRANCIS WHITE, A/K/A, THE WHITE-HAIRED GUY,

did unlawfully and knowingly make an extortionate extension of credit within the meaning of Title 18, United States Code,

32

Section 891(6), to Dominic Santoro, Jr., in the amount of approximately twenty thousand dollars ($20,000), with respect to which it was the understanding of the debtor Dominic Santoro, Jr., and the defendant-creditor at the time the loan was made, that delay in making repayment and failure to make repayment could result in the use of violence and other criminal means to cause harm to the person, reputation, and property of said debtor, in violation of Title 18, United States Code, Section 892(a).

(B)   From in or about fall 2001, to in or about January 2002, the exact dates being to the Grand Jury unknown, in the District of Massachusetts, the defendant,

FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

did unlawfully and knowingly participate in the use of extortionate means within the meaning of Title 18, United States Code, Section 891(7), in order to collect and attempt to collect an extension of credit within the meaning of Title 18, United States Code, Section 891(1), from Dominic Santoro, Jr., the debtor, in the amount of approximately twenty thousand dollars ($20,000), in violation of Title 18, United States Code, Sections 894(a) and 2.

## RACKETEERING ACT 31

The defendant named below committed the following acts relating to the making and collecting of extortionate extensions of credit involving Howard Levenson, commission of any one of which alone constitutes the commission of RACKETEERING ACT 31:

(A)    On or about October 31, 1991, at Boston, in the
District of Massachusetts, the defendant,

FRANCIS WHITE, A/K/A, THE WHITE-HAIRED GUY,

did unlawfully and knowingly make an extortionate extension of
credit within the meaning of Title 18, United States Code,
Section 891(6), to Howard Levenson, in the amount of
approximately twenty thousand dollars ($20,000), with respect to
which it was the understanding of the debtor Howard Levenson and
the defendant-creditor at the time the loan was made, that delay
in making repayment and failure to make repayment could result in
the use of violence and other criminal means to cause harm to the
person, reputation, and property of said debtor, in violation of
Title 18, United States Code, Section 892(a).

(B)    From in or about November 1991, to in or about summer
1993, the exact dates being to the Grand Jury unknown, in the
District of Massachusetts, the defendant,

FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

did unlawfully and knowingly participate in the use of
extortionate means within the meaning of Title 18, United States
Code, Section 891(7), in order to collect and attempt to collect
extensions of credit within the meaning of Title 18, United
States Code, Section 891(1), from Howard Levenson, the debtor, in
the amount of approximately forty thousand dollars ($40,000), in
violation of Title 18, United States Code, Sections 894(a) and 2.

34

RACKETEERING ACT 32

The defendant named below committed the following acts relating to the making and collecting of extortionate extensions of credit involving James Katz, commission of any one of which alone constitutes the commission of RACKETEERING ACT 32:

(A)   In or about late fall 1991, the exact date being to the Grand Jury unknown, at Boston, in the District of Massachusetts, the defendant,

FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

did unlawfully and knowingly make an extortionate extension of credit within the meaning of Title 18, United States Code, Section 891(6), to James Katz, in the amount of approximately twenty thousand dollars ($20,000), with respect to which it was the understanding of the debtor James Katz and the defendant-creditor at the time the loan was made, that delay in making repayment and failure to make repayment could result in the use of violence and other criminal means to cause harm to the person, reputation, and property of said debtor, in violation of Title 18, United States Code, Section 892(a).

(B)   From in or about late fall 1991, to in or about June 1992, the exact dates being to the Grand Jury unknown, in the District of Massachusetts, the defendant,

FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

did unlawfully and knowingly participate in the use of extortionate means within the meaning of Title 18, United States Code, Section 891(7), in order to collect and attempt to collect

35

an extension of credit within the meaning of Title 18, United States Code, Section 891(1), from James Katz, the debtor, in the amount of approximately twenty thousand ($20,000), in violation of Title 18, United States Code, Sections 894(a) and 2.

## RACKETEERING ACT 33

The defendant named below committed the following acts relating to the making and collecting of extortionate extensions of credit involving James Katz, commission of any one of which alone constitutes the commission of RACKETEERING ACT 33:

(A)  In or about summer 1992, the exact date being to the Grand Jury unknown, at Boston, in the District of Massachusetts, the defendant,

FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

did unlawfully and knowingly make an extortionate extension of credit within the meaning of Title 18, United States Code, Section 891(6), to James Katz, in the amount of approximately twenty thousand dollars ($20,000), with respect to which it was the understanding of the debtor James Katz and the defendant-creditor at the time the loan was made, that delay in making repayment and failure to make repayment could result in the use of violence and other criminal means to cause harm to the person, reputation, and property of said debtor, in violation of Title 18, United States Code, Section 892(a).

(B)  From in or about summer 1992, to in or about fall 1993, the exact dates being to the Grand Jury unknown, in the District of Massachusetts, the defendant,

36

FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

did unlawfully and knowingly participate in the use of

extortionate means within the meaning of Title 18, United States

Code, Section 891(7), in order to collect and attempt to collect

an extension of credit within the meaning of Title 18, United

States Code, Section 891(1), from James Katz, the debtor, in the

amount of approximately twenty thousand dollars ($20,000), in

violation of Title 18, United States Code, Sections 894(a) and 2.

## RACKETEERING ACT 34

In or about 1992, the exact date being to the Grand Jury

unknown, at Boston, in the District of Massachusetts, the

defendant,

FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

did unlawfully and knowingly make an extortionate extension of

credit within the meaning of Title 18, United States Code,

Section 891(6), to Paul Ciccolo, in the amount of approximately

five thousand dollars ($5,000), with respect to which it was the

understanding of the debtor Paul Ciccolo and the defendant-

creditor at the time the loan was made, that delay in making

repayment and failure to make repayment could result in the use

of violence and other criminal means to cause harm to the person,

reputation, and property of said debtor, in violation of Title

18, United States Code, Section 892(a).

## RACKETEERING ACT 35

From in or about 1992, to in or about 1994, the exact dates

being to the Grand Jury unknown, in the District of

37

Massachusetts, the defendant,

FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

did unlawfully and knowingly participate in the use of
extortionate means within the meaning of Title 18, United States
Code, Section 891(7), in order to collect and attempt to collect
extensions of credit within the meaning of Title 18, United
States Code, Section 891(1), from Paul Ciccolo, the debtor, in
the amount of approximately fifteen thousand dollars ($15,000),
in violation of Title 18, United States Code, Sections 894(a) and
2.

## Collection of Unlawful Debt

5. It was also part of the racketeering conspiracy that the
defendants FREDERICK A. SIMONE and FRANCIS WHITE agreed to the
collection of unlawful debt in the conduct of the affairs of the
Enterprise as defined by Title 18, United States Code, Section
1961(6), that is, a debt (A) incurred and contracted in gambling
activity which was in violation of the law of the United States
and the law of the Commonwealth of Massachusetts, and which is
unenforceable under state and federal law, in whole and in part,
as to principal and interest because of the laws relating to
usury, and (B) which was incurred in connection with the business
of gambling in violation of the law of the United States and the
law of the Commonwealth of Massachusetts, and the business of
lending money and a thing of value at a rate usurious under state
and federal law where the usurious rate is at least twice the
enforceable rate as follows:

38

(a)    From in or about March 1999, to in or about April 1999, the exact dates being to the Grand Jury unknown, defendant FREDERICK A. SIMONE participated in the collection and attempted collection of an unlawful and usurious debt in the amount of approximately thirty thousand dollars ($30,000) owed by Chris Kotsiopoulos.

(b)    From in or about April 1999, to in or about June 1999, the exact dates being to the Grand Jury unknown, defendant FREDERICK A. SIMONE participated in the collection and attempted collection of an unlawful and usurious debt in the amount of approximately forty-five thousand dollars ($45,000) owed by Chris Kotsiopoulos.

(c)    From in or about April 1999, continuing at least until September 1999, defendant FREDERICK A. SIMONE participated in the collection and attempted collection of an unlawful and usurious debt in the amount of approximately twenty thousand dollars ($20,000) owed by Vincent Roberto.

(d)    From in or about May 1999, to in or about October 1999, defendant FREDERICK A. SIMONE participated in the collection and attempted collection of an unlawful and usurious debt in the amount of approximately ten thousand dollars ($10,000) owed by Vincent Roberto.

(e)    From in or about May 1999, to in or about October 1999, defendant FREDERICK A. SIMONE participated in the collection and attempted collection of an unlawful debt incurred in gambling activity in connection with the business of gambling

39

in violation of the laws of the Commonwealth of Massachusetts and the United States, in the amount of approximately three thousand dollars ($3,000) owed by Mark Petralia.

(f)   From in or about summer 1999, to in or about summer 2000, the exact dates being to the Grand Jury unknown, defendant FREDERICK A. SIMONE participated in the collection and attempted collection of an unlawful and usurious debt in the amount of approximately ten thousand dollars ($10,000) owed by Marc Petralia.

(g)   From in or about summer 1999, to in or about fall/early winter 2000, defendant FRANCIS WHITE participated in the collection and attempted collection of an unlawful and usurious debt in the amount of approximately five thousand dollars ($5,000) owed by Vincent Roberto.

(h)   From in or about summer 1999, to on or about April 2000, the exact dates being to the Grand Jury unknown, defendant FREDERICK A. SIMONE participated in the collection and attempted collection of an unlawful and usurious debt in the amount of approximately seven thousand dollars ($7,000) owed by Kevin Keegan.

(i)   From in or about September 1999, to in or about October 1999, the exact dates being to the Grand Jury unknown, defendant FRANCIS WHITE participated in the collection and attempted collection of an unlawful and usurious debt in the amount of approximately twenty-five thousand dollars ($25,000) owed by Ronald Zampanti.

40

(j)   From in or about fall 1999, to in or about late
fall 1999, defendant FRANCIS WHITE participated in the collection
and attempted collection of an unlawful and usurious debt in the
amount of approximately twenty thousand dollars ($20,000) owed by
Dominic Santoro, Jr.

(k)   From in or about October 1999, to in or about June
2001, the exact dates being to the Grand Jury unknown, defendant
FREDERICK A. SIMONE participated in the collection and attempted
collection of unlawful and usurious debts in the amount of
approximately nineteen thousand dollars ($19,000) owed by Anthony
Musto.

(l)   In or about late November 1999, to in or about
December 1999, the exact dates being to the Grand Jury unknown,
defendant FRANCIS WHITE participated in the collection and
attempted collection of an unlawful and usurious debt in the
amount of approximately twenty-five thousand dollars ($25,000)
owed by Ronald Zampanti.

(m)   In or about fall 1999, the exact dates being to
the Grand Jury unknown, defendant FRANCIS WHITE participated in
the collection and attempted collection of an unlawful and
usurious debt in the amount of approximately three thousand
dollars ($3,000) owed by Frederick Sarno.

(n)   From in or about January 2000, to in or about
spring 2000, defendant FRANCIS WHITE participated in the
collection and attempted collection of an unlawful and usurious
debt in the amount of approximately three thousand dollars

41

($3,000), owed by Frederick Sarno.

(o)    From in or about April 2000, to in or about fall
2001, defendant FRANCIS WHITE participated in the collection and
attempted collection of an unlawful and usurious debt in the
amount of approximately forty-seven thousand dollars ($47,000)
owed by Joseph Zampanti.

(p)    From in or about April 2000, to in or about fall
2001, defendant FRANCIS WHITE participated in the collection and
attempted collection of an unlawful and usurious debt in the
amount of approximately forty-seven thousand dollars ($47,000)
owed by Carmine T. D'Amelio, a/k/a Junior.

(q)    In or about fall 2000, defendant FRANCIS WHITE
participated in the collection and attempted collection of an
unlawful and usurious debt in the amount of approximately twenty
thousand dollars ($20,000) owed by Dominic Santoro, Jr.

(r)    From in or about fall 2001, to in or about January
2002, defendant FRANCIS WHITE participated in the collection and
attempted collection of an unlawful and usurious debt in the
amount of approximately twenty thousand dollars ($20,000) owed by
Dominic Santoro, Jr.

### Overt Acts of the Racketeering Conspiracy

6.    In furtherance of the racketeering conspiracy and to
effect the objects thereof, the defendants and their co-
conspirators committed the following overt acts, among others, in
the District of Massachusetts and elsewhere:

(a)    On or about October 31, 1991, in Boston,

42

Massachusetts, defendant FRANCIS WHITE loaned Howard Levenson approximately $20,000 in cash.

(b)    In or about the first week of December 1991, defendant FRANCIS WHITE collected a "vigorish" or interest payment from James Katz.

(c)    On or about March 1, 1993, Paul Ciccolo made an interest payment on a loan in accordance with the instructions provided him by defendant FRANCIS WHITE.

(d)    In or about February 1996, defendant FRANCIS WHITE extended credit to Frederick Sarno in the amount of approximately $4,000.

(e)    In or about March 1996, defendant FRANCIS WHITE collected a weekly interest payment from Frederick Sarno.

(f)    In or about March 1998, Vincent Roberto introduced Chris Kotsiopoulos to defendant FREDERICK A. SIMONE.

(g)    In or about April 1998, defendant FREDERICK A. SIMONE used his influence as a Soldier in the New England Family to squash or negate a loansharking debt in the amount of approximately $25,000 owed by a debtor to a loanshark.

(h)    In or about July 1998, defendant VINCENT C. GIOACCHINI collected a monthly tribute payment.

(i)    In or about June 1998, defendant FREDERICK A. SIMONE approached an individual known to the Grand Jury and demanded tribute payments for the period of time in which SIMONE had been incarcerated, and during which time that individual had not been making such tribute payments.

43

(j)    In or about January 1999, defendant FREDERICK A.
SIMONE collected a monthly tribute payment from Richard Citrano,
so that Citrano could continue the operation of his bookmaking
business.

(k)    In or about May 1999, defendant FREDERICK A.
SIMONE approached an individual known to the Grand Jury and asked
him, "who are you with?"

(l)    In or about May 1999, defendant FREDERICK A.
SIMONE spoke with Mark Petralia about a gambling debt at Gone
Tomatoes Restaurant in Mashpee, Massachusetts.

(m)    In or about August 1999, defendant FREDERICK A.
SIMONE collected monies owed by Mark Petralia on an outstanding
debt.

(n)    In or about September 1999, in East Boston,
Massachusetts, defendant FRANCIS WHITE extended a loan to Ronald
Zampanti in the amount of $25,000.

(o)    On or about February 1, 2000, defendant VINCENT C.
GIOACCHINI collected a $1,000 monthly tribute payment from
Carmine T. D'Amelio, a/k/a Junior.

(p)    On or about March 9, 2000, defendant FREDERICK A.
SIMONE collected interest or "vigorish" payments on usurious
loans he had extended at his residence in Framingham,
Massachusetts.

(q)    On or about March 16, 2000, defendant FREDERICK A.
SIMONE collected a weekly interest payment on a usurious loan
from Anthony Musto.

44

(r)   In or about April 2000, defendant FREDERICK A. SIMONE "okayed" or vouched for a bettor to place wagers with an illegal gambling business.

(s)   On or about April 1, 2000, defendant VINCENT C. GIOACCHINI agreed to accept a $500 per month tribute payment from Carmine T. D'Amelio's gambling organization, rather than $1,000 per month.

(t)   In or about May 2000, an individual known to the Grand Jury traveled from Rhode Island to Framingham, Massachusetts, to meet with defendant FREDERICK A. SIMONE to discuss a gambling debt owed and to make arrangements to pay down the debt.

(u)   In the first week of May 2000, defendant FREDERICK A. SIMONE collected an interest payment from a person known to the Grand Jury.

(v)   In or about July 2000, in East Boston, Massachusetts, defendant VINCENT C. GIOACCHINI collected a monthly tribute payment from Joseph Young.

(w)   In or about August 2000, Chris Kotsiopoulos caused a $10,000 tribute payment to be made to defendant FREDERICK A. SIMONE.

(x)   On or about September 1, 2000, defendant FREDERICK A. SIMONE collected a $1,000 monthly tribute payment from Michael Dezotell.

(y)   On or about October 2, 2000, Michael Dezotell paid defendant FREDERICK A. SIMONE a monthly tribute payment at his

45

home in Framingham, Massachusetts.

(z)  On October 18, 2000, defendant FREDERICK A. SIMONE telephoned an individual known to the Grand Jury in Rhode Island.

(aa) On or about October 19, 2000, two individuals known to the Grand Jury traveled from the State of Rhode Island to Massachusetts and met with defendant FREDERICK A. SIMONE and another person at the Tara Hotel in Framingham, Massachusetts.

(bb) On October 21, 2000, defendant VINCENT C. GIOACCHINI met with defendant FREDERICK A. SIMONE in Framingham, Massachusetts, where they discussed an internal struggle within the New England Family of La Cosa Nostra.

(cc) On or about October 21, 2000, defendant VINCENT C. GIOACCHINI met with defendant FREDERICK A. SIMONE and said that he, GIOACCHINI, had to go to work because he could no longer make a living "on the street."

(dd) On or about October 21, 2000, defendant VINCENT C. GIOACCHINI discussed with defendant FREDERICK A. SIMONE that Joseph Young had been instructed by another member of the New England Family not to make any further tribute payments to defendant GIOACCHINI.

(ee) On October 27, 2000, defendant FREDERICK A. SIMONE telephoned an individual known to the Grand Jury in Rhode Island and discussed an internal dispute in the Family which had not been resolved, stating that "all bets were off," and he would do what he had to do.

(ff) On October 28, 2000, an individual known to the

46

Grand Jury traveled from Rhode Island to meet with defendants
FREDERICK A. SIMONE, VINCENT C. GIOACCHINI, and FRANCIS WHITE in
Framingham, Massachusetts, where they discussed the ongoing
internal dispute within the Family.

(gg) On or about October 28, 2000, two members of the
hierarchy of the New England Family from Rhode Island, who are
known to the Grand Jury, traveled from Rhode Island to Boston,
Massachusetts, where they met with two members of the Boston
faction of the New England Family who are also known to the Grand
Jury, in order to resolve a Family dispute.

(hh) On October 28, 2000, an individual known to the
Grand Jury met with defendants FREDERICK A. SIMONE, VINCENT C.
GIOACCHINI, and FRANCIS WHITE in Framingham, Massachusetts, and
told them that they had to resolve the internal dispute within
the Family so that they all could go back to "earning a living."

(ii) On or about October 29, 2000, an individual known
to the Grand Jury called defendant FREDERICK A. SIMONE at his
home in Framingham, Massachusetts, and told him that the meeting
in Boston, attended by the two Rhode Island members of the New
England Family, went well.

(jj) On October 29, 2000, defendant FREDERICK A. SIMONE
collected a tribute payment from Michael Dezotell at his
residence.

(kk) On or about November 5, 2000, defendant FREDERICK
A. SIMONE and Anthony Musto discussed tribute payments made on
behalf of Robert "Bezeek" Ciolfi which had been brought to

47

defendant FREDERICK A. SIMONE's residence by an individual known to the Grand Jury.

(ll) On or about November 26, 2000, in Framingham, Massachusetts, defendant FREDERICK A. SIMONE and others known to the Grand Jury discussed hiding assets to avoid scrutiny by the Internal Revenue Service.

(mm) On or about November 28, 2000, defendant FREDERICK A. SIMONE telephoned an individual known to the Grand Jury in Rhode Island to discuss the resolution of an internal problem within the Family.

(nn) On or about November 29, 2000, an individual known to the Grand Jury told defendant FREDERICK A. SIMONE that he would ask the Boss for permission to allow defendants FREDERICK A. SIMONE and VINCENT C. GIOACCHINI to report directly to the hierarchy of the Family in Rhode Island rather than to the leadership in Boston.

(oo) On or about November 30, 2000, defendant FREDERICK A. SIMONE telephoned an individual known to the Grand Jury in Rhode Island and they discussed the meeting which took place in Framingham, Massachusetts, the day before.

(pp) On or about January 1, 2001, defendant VINCENT C. GIOACCHINI collected a tribute payment from Carmine T. D'Amelio, a/k/a Junior.

(qq) In or about February 2001, defendant FRANCIS WHITE collected an interest payment on a usurious loan from a person known to the Grand Jury.

48

All in violation of Title 18, United States Code, Section
1962(d).

COUNT TWO

(18 U.S.C. §§1962(c) and 2)
(RICO - Substantive)

### The Enterprise

1.  The allegations contained in paragraphs 1 and 3, the
racketeering acts contained in paragraph 4, and subparagraphs (a)
through (r) of paragraph 5 of Count One of this Indictment are
incorporated in this Count Two by reference as if fully set forth
herein.

### Racketeering

2.  From in or before 1991 through in or after January 2002,
in the District of Massachusetts and elsewhere, the defendants,

FREDERICK A. SIMONE, A/K/A FREDDY, A/K/A THE NEIGHBOR,
VINCENT C. GIOACCHINI, A/K/A DEE DEE, and
FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

and other persons known and unknown to the Grand Jury, being
persons employed by and associated with an Enterprise, as defined
in Title 18, United States Code, Section 1961(4), and as set
forth in paragraph 1 of Count One of this Indictment, did
unlawfully and knowingly conduct and participate, directly and
indirectly, in the conduct of the affairs of the Enterprise,
which was engaged in and the activities of which affected
interstate commerce and foreign commerce, through a pattern of
racketeering activity and the collection of unlawful debt.

### The Pattern of Racketeering Activity

3.  The pattern of racketeering activity as defined by Title
18, United States Code, Sections 1961(1) and (5), through which
each of the defendants conducted and participated in the conduct

50

of the affairs of the Enterprise consisted of acts indictable
under Title 18, United States Code, Sections 892 and 894
(relating to making extortionate extensions of credit and
collecting extensions of credit by extortionate means); Section
1951 (relating to interference with commerce by extortion); and
Section 1952 (relating to interstate travel in aid of
racketeering); which acts consist of the racketeering acts in
which each defendant is named as described in paragraph 4 of
Count One of this Indictment.

### Collection of Unlawful Debt

4.   The collection of unlawful debt as defined by Title 18,
United States Code, Section 1961(6), that is, a debt (A) incurred
or contracted in gambling activity which was in violation of the
law of the United States and the law of the Commonwealth of
Massachusetts, and which is unenforceable under state and federal
law in whole and in part as to principal or interest because of
the laws relating to usury, and (B) which was incurred in
connection with the business of gambling in violation of the law
of the United States and the law of the Commonwealth of
Massachusetts, and the business of lending money and a thing of
value at a rate usurious under state and federal law, where the
usurious rate was at least twice the enforceable rate, through
which the defendants,

FREDERICK A. SIMONE, A/K/A FREDDY, A/K/A THE NEIGHBOR, and
FRANCIS WHITE, A/K/A THE WHITE-HAIRED GUY,

conducted and participated in the conduct of the affairs of the
Enterprise consisted of the acts of collecting and aiding and

51

abetting in the collection of usurious loans and gambling debts in which each defendant is named as described in sub-paragraphs (a) through (r) of paragraph 5 of Count One of the Indictment.

All in violation of Title 18, United States Code, Sections 1962(c) and 2.

## COUNT THREE

### (18 U.S.C. §1951)

From in or before 1997, and continuing until in or about January 2001, both dates being approximate and inclusive, in the District of Massachusetts, and elsewhere, the defendants,

FREDERICK A. SIMONE, A/K/A FREDDY, A/K/A THE NEIGHBOR, and
VINCENT C. GIOACCHINI, A/K/A DEE DEE,

and others known and unknown to the Grand Jury, did unlawfully, knowingly, and intentionally conspire to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion, to wit: the obtaining of property from persons known and unknown to the Grand Jury, including, but not limited to, Carmine T. D'Amelio, a/k/a Junior; Joseph Zampanti; Ronald Zampanti; Joseph Young; Michael Stoyko; Vincent Roberto; Chris Kotsiopoulos; Michael Dezotell; Richard Citrano; and Robert Ciolfi, with their consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear of injury, including indirect threats of physical harm, property damage, and economic loss, in violation of Section 1951 of Title 18, United States Code.

It was part of the conspiracy that members and associates of the New England Family of La Cosa Nostra identified individuals in Massachusetts, in areas the defendants considered were their "territory" and elsewhere, who were considered favorable targets for extortion based upon such factors as their involvement in illegal activities, their reluctance to report events to law enforcement, and their possession of and access to large amounts

of cash and other things of value.  It was further a part of the
conspiracy that at times the defendants and others committed acts
of violence, engaged in acts and discussions in preparation for
the commission of acts of violence, and used their reputations
and positions in the New England Family to instill fear in
persons in order to insure compliance with the defendants.

It was further a part of the conspiracy that certain
individuals made monthly monetary payments to the defendants in
order to continue their illegal endeavors, and that the
defendants used those profits and proceeds to maintain their
standard of living and to engage in additional criminal activity.

In furtherance of the conspiracy, and to effect the objects
thereof, the following overt acts, among others, were committed
in the District of Massachusetts and elsewhere:

(a)  On or about June 1, 1998, defendant FREDERICK A. SIMONE
collected a monthly tribute payment.

(b)  On or about July 1, 1999, defendant FREDERICK A. SIMONE
collected a monthly tribute payment at Framingham, Massachusetts.

(c)  On or about July 1999, defendant VINCENT C. GIOACCHINI
collected a monthly tribute payment from Joseph Young.

(d)  On or about September 1, 1999, defendant VINCENT C.
GIOACCHINI collected a monthly tribute payment from Carmine T.
D'Amelio, a/k/a Junior.

(e)  On or about December 1, 1999, defendant VINCENT C.
GIOACCHINI collected a monthly tribute payment from Joseph Young.

(f)  On or about March 1, 2000, defendant FREDERICK A.

54

SIMONE collected a monthly tribute payment at his home in Framingham, Massachusetts.

(g)  On or about March 1, 2000, defendant VINCENT C. GIOACCHINI collected a monthly tribute payment from Carmine T. D'Amelio, a/k/a Junior.

(h)  On or about April 1, 2000, defendant FREDERICK A. SIMONE collected a monthly tribute payment at his home in Framingham, Massachusetts.

(i)  On or about August 1, 2000, defendant VINCENT C. GIOACCHINI collected a monthly tribute payment from Joseph Young.

(j)  On or about August 2000, defendant FREDERICK A. SIMONE collected a lump sum tribute payment from Chris Kotsiopoulos.

(k)  On or about September 1, 2000, defendant VINCENT C. GIOACCHINI collected a monthly tribute payment from Joseph Young.

(l)  On or about September 1, 2000, defendant FREDERICK A. SIMONE collected a monthly tribute payment from Robert "Bezeek" Ciolfi.

(m)  In or about October 2000, defendant VINCENT C. GIOACCHINI had a conversation with Joseph Young in which he instructed Young that his monthly tribute payment would be increased from $500 to $1,000.

(n)  On or about October 1, 2000, at his residence in Framingham, Massachusetts, defendant FREDERICK A. SIMONE collected a monthly tribute payment from Michael Dezotell.

(o)  On or about October 21, 2000, defendant VINCENT C. GIOACCHINI told defendant FREDERICK A. SIMONE that he had been

55

protecting Joseph Young while an individual known to the Grand Jury was incarcerated.

(p)  On or about October 21, 2000, defendant VINCENT C. GIOACCHINI reported to defendant FREDERICK A. SIMONE that an individual known to the Grand Jury said that GIOACCHINI and SIMONE were "entitled to nothing."

(q)  On or about October 28, 2000, defendant FREDERICK A. SIMONE told defendant VINCENT C. GIOACCHINI to discontinue receiving tribute payments from Carmine T. D'Amelio at the Elite Donut in East Boston, and to "change Junior up."

(r)  On or about October 29, 2000, defendant FREDERICK A. SIMONE collected a monthly tribute payment from Michael Dezotell.

(s)  On or about January 1, 2001, defendant VINCENT C. GIOACCHINI collected a monthly tribute payment from Carmine T. D'Amelio, a/k/a Junior.

All in violation of Title 18, United States Code, Section 1951.

## COUNT FOUR

### (18 U.S.C. §§1951(a) & 2)

From in or before March 1998, and continuing until January 2001, the exact dates being to the Grand Jury unknown, in the District of Massachusetts, the defendant,

FREDERICK A. SIMONE, A/K/A FREDDY, A/K/A THE NEIGHBOR, did knowingly and unlawfully obtain property, to wit, sums of United States currency from Chris Kotsiopoulos, who was engaged with other persons known and unknown to the Grand Jury in unlawful gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

## COUNT FIVE

(18 U.S.C. §§1951(a) & 2)

From in or before March 1998, and continuing until December 2000, the exact dates being to the Grand Jury unknown, in the District of Massachusetts, the defendant,

FREDERICK A. SIMONE, A/K/A FREDDY, A/K/A THE NEIGHBOR, did knowingly and unlawfully obtain property, to wit, sums of United States currency from Michael Dezotell, who was engaged with other persons known and unknown to the Grand Jury in unlawful gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

COUNT SIX

(18 U.S.C. §§1951(a) & 2)

From in or before 1998, and continuing until December 2000, the exact dates being to the Grand Jury unknown, in the District of Massachusetts, the defendant,

FREDERICK A. SIMONE, A/K/A FREDDY, A/K/A THE NEIGHBOR, did knowingly and unlawfully obtain property, to wit, sums of United States currency from Robert Ciolfi, a/k/a Bezeek, who was engaged with other persons known and unknown to the Grand Jury in unlawful gambling activity, with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

COUNT SEVEN

(18 U.S.C. §§1951(a) & 2)

From in or before 1998, and continuing until March 2000, the exact dates being to the Grand Jury unknown, in the District of Massachusetts, the defendant,

VINCENT C. GIOACCHINI, A/K/A DEE DEE,

did knowingly and unlawfully obtain property, to wit, one thousand dollars ($1,000) per month in United States currency from Carmine T. D'Amelio, a/k/a Junior, and other persons known and unknown to the Grand Jury, who were engaged in unlawful gambling activity, with their consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, including indirect threats of physical harm, property damage, and economic loss, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

60