UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS   FILED
IN CLERKS OFFICE

2003 DEC -4 P 2: 13

UNITED STATES OF AMERICA

v.

Criminal No. 03-CR-10356-MLW MASS.

U.S. DISTRICT COURT

FRANCIS WHITE

## FRANCIS WHITE'S OPPOSITION TO
## MOTION FOR PRETRIAL DETENTION

The Defendant, Francis White, stands charged with 21 counts (including charges relating

to racketeering, conspiracy, and loansharking).

Mr. White was taken into custody on Monday, December 1, 2003, and has been held in

detention since then. On that same day, the prosecution announced that it would seek to detain

Mr. White pending trial, asserting that he is a serious risk of flight, a danger to the community,

and that there is a serious risk that he will obstruct justice.   For the reasons that follow, Mr.

White respectfully requests that this Court deny the prosecution's motion for pretrial detention.

## I.   STANDARD FOR PRETRIAL DETENTION

"In our society, liberty is the norm, and detention prior to trial or without trial is the

carefully limited exception." United States v. Salerno, 481 U.S. 739, 747 (1987).   Thus, before

ordering detention, this Court would first have to find by clearly and convincing evidence[1] that

no condition(s) would reasonable assure the safety of the community, and/or by a preponderance

---

[1]   The clear and convincing standard is higher than a mere preponderance standard;
"this standard of proof requires that the evidence support such a conclusion with a *high degree of
certainty*." United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985)(emphasis added).

1

FILED
In Open Court
USDC, Mass.
Date 12/4/03
By _____
Deputy Clerk

of the evidence that no condition(s) would reasonably assure Mr. White's appearance at trial.

See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

An absolute guarantee that Mr. White will not flee or pose a danger is not required by either the statute or case law. "Undoubtedly, the safety of the community can be reasonably assured without being absolutely guaranteed." United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990). "Requiring that release conditions *guarantee* the community's safety would fly in the teeth of Congress's clear intent that only a limited number of defendant's be subject to pretrial detention." Id. (emphasis added).

## II.    ARGUMENT

To determine whether the prosecution has met its burdens, this Court must consider a number of factors: (1) Mr. White's personal history and characteristics; (2) the nature and circumstances of the charged offenses; (3) the strength of prosecution's case; and (4) the nature and degree of danger to the community. See 18 U.S.C. § 3142(g). In light of these factors and others (discussed below), this Court should deny the prosecution's motion for pretrial detention.

### A.    Mr. White's Personal History and Characteristics Weigh in Favor of Release.

Regarding Mr. White's personal history and characteristics, this Court should consider

(A) [his] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, [Mr. White] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law....

18 U.S.C. § 3142(g)(3).

2

As to his criminal history, Mr. White has no prior convictions.[2] His remaining personal characteristics weigh mightily in favor of release. He is widely regarded as a man of great character, kindness, and generosity. See Exhibits attached hereto (letters of support from family, friends, and members of the community supporting Mr. White's release into the community.) Moreover, as discussed below, Mr. White has significant and deep ties to his family and his community; and his past conduct does not reflect any cause for concern about a propensity for violence or any other potential danger to the community.

## 1. Mr. White Has Strong Ties to Family in Massachusetts.

Mr. White's devotion to his family cannot be questioned. As the many letters from Mr. White's supporters show, Mr. White is, by all accounts, a devoted family man. He is a loving father who spends much time with his two sons, Anthony (age 29) and Alex (age 14), as well as his elderly mother (age 88). See, e.g., letters of support, stating things such as "[Mr. White] is very involved in the lives of his [sons and mother]. His family is the love of his life."; "His constant dedication and loving attention to his family would prohibit him from being a risk of bail."; "[Mr. White] is a kind, caring, intelligent, courteous, honorable and compassionate man with an extraordinary love for and commitment to his children."

Mr. White not only pays weekly child support for Alex, but more importantly, he spends considerable amounts of time with Alex during the school year as well as holidays and summer vacations. As Alex's mother, Ms. Zuckerman, explains in her letter, "Franny [Francis White] and Alex share an extraordinarily close relationship built on respect and understanding. Franny

---

[2]      He has two prior arrests, both for OUI. The first – dating back to 1977 – was continued without a finding and ultimately dismissed following his participation in an alcohol education program. He was charged with OUI at a later time, but he was found not guilty.

3

has been a constant and reliable presence in Alex's life through the years regardless of the fact that we never married." Ex. A.

During their frequent visits, Mr. White is committed to sharing quality time and new experiences with Alex. For example, he takes Alex to baseball games, they go fishing, and they engage in countless other activities that Alex enjoys. See Exh. B . He also takes Alex to New Hampshire every other weekend · even though Mr. White does not ski – so that Alex can take lessons. See Exh. A.

Although he is not the full-time custodial parent, Mr. White plays a very active in Alex's education (which is an intense process, since Alex has been placed in special education classes). See id. He communicates with Alex's teachers, school administrators, and attends his school functions. See id. and Exh. B, C.

Mr. White is also very close to Alex's mother and younger brother. Ms. Zuckerman poignantly writes of a particular time that Mr. White exhibited his devotion to his family:

> Our son Alex has been epileptic since he was five years old. His
> medical requirements have been great and have persisted
> throughout his childhood. Alex has required medication three
> times daily and has had dozens of tests to monitor his seizures.
> Franny has been supportive, proactive and available for Alex and
> myself during these difficult times. As an example, last
> Thanksgiving Alex awoke with a seizure so severe that he fell and
> dislocated his elbow. Post-seizure[,] Alex slept for a full nine
> hours. Franny came to my home in Andover and sat in Alex's
> room so that my younger son could spend the holiday as planned
> with his aunts , uncles and cousins, thereby lessening the trauma
> for him [Alex's younger brother] and allowing Alex the rest he
> required.

Exh. A.

Mr. White is also close to his oldest son, Anthony, who lives next door. Anthony is willing to post as bail two homes that he owns (his own home as well as the one house in which

4

Mr. White resides) . Together, the two properties have a market value of $830,000.00;

Anthony's equity totals $628,177.44.

Mr. White is also very close to his mother, and has been his entire life. Although Mr.

White was offered scholarships to attend college (he was an excellent student, athlete, and

president of his high school class), he elected to forego a higher education to stay at home to take

care of his mother.

To this day, he remains very involved in his mother's life: he is her legal guardian, and

visits her every day. See Exh. G. As one close friend explains, Mr. White

> spends time with his mother and watches out for her needs. By
> living so close to her, he is able to see her often, which is
> extremely important to an elderly person, and he made sure she
> had a home health aid and care when she was living at home. He
> runs errands for her and accompanies her to her doctors'
> appointments. On holidays, it would be easy for him to go to
> places he is invited but instead, he chose to stay home so she
> would have family around and would be comfortable. Although
> she is in elderly care now, she was able to live in the home she had
> known all of her life for many years more than most due to the
> devoted attention of her son.

Exh. B. Many other letters similarly speak to Mr. White's close, supportive relationship with

his mother.

Given Mr. White's commitments to his family in the Boston area, this Court can reach

only one conclusion: Mr. White's family ties weigh very heavily in favor of release. Compare,

United States v. Pierce, 107 F.Supp.2d 126, 133 (D.Mass. 2000)(finding defendant posed a

serious risk of flight where his primary family ties were in Florida, he resided in Florida for

several years prior to his arrest, he used a Florida driver's license for identification).

## 2.     Mr. White Has Strong Ties to the Local Community.

Coupled with his enduring family ties, Mr. White also has considerable ties to his community. Many local business people and members of the bar have written to this Court to express their favorable views of Mr. White, his activities in the community, and his favorable reputation as a kind and generous man. See, e.g., Exh. I (letter from Owen Todd, Esq.); J (letter from Julia Shire, chef and co-owner of Locke Ober and Excelsior restaurants); K (letter from Harvey Allen, President and CEO of M.S. Walker); L (letter from Kimberly Anne James, President of Executive Travel and Tours); M (letter from Gregory Cioffi, CPA); N (letter from Michael Cioffi, Esq.)

## 3.  Mr. White's Past Conduct Reflects No Risk of Violence or Danger to the Community.

The prosecution has not provided this Court with proof of any particular incident that shows Mr. White is a violent or dangerous man. Nevertheless, the prosecution apparently intends to rely upon unreasonable inferences and unsupported conclusions to prove otherwise. For example, in his affidavit, Detective Tutungian tries to paint Mr. White as a danger to the community because he is – allegedly – a violent man who is committed to furthering the interests of LCN, no matter the cost. But even a cursory examination of the affidavit shows that any such theory is, at best, far-fetched. The evidence identified by the prosecution certainly does not support it.

Seeking to prove dangerous, on page 42 (¶51) of his affidavit and under the heading "Armed and Dangerous," Detective Tutungian alleges, "As the struggle within the LCN Family developed, SIMONE, GIOACCHINI and WHITE repeatedly made clear to one another their mutual plea to take whatever steps necessary to vindicate their names and defend their economic

6

interests." In support of this bold conclusion, the affidavit cites a conversation between Simone

and Gioacchini that took place on October 21, 2000. But the attempt to hold Mr. White

accountable for that conversation is preposterous: Mr. White was not present during that

conversation, nor was his name even mentioned in any of the supporting excerpts. Moreover, to

the extent that Simone and Gioacchini were discussing any use of force, they were doing so in

response to the threats that had recently been made against them, not to "vindicate their names

and defend their economic interests."

A similarly misleading allegation appears on pages 39-40, ¶ 50, which states:

> One somewhat protracted conversation highlights the direct
> conversation between defendants' illegal activities and their
> willingness to use violence to collect their money…SIMONE,
> GIOACCHINI, and WHITE each described what they would do to
> Rhode Island Capo Matthew Guglicmetti if they discovered that
> Guglicmetti was secretly deceiving them by playing both sides of
> the dispute….

The affidavit then goes on to cite pages 5 and 9-10 of tape 1, dated 10/28/00, which states in

relevant part:

> SIMONE: …"I'll clean up and that's the end of it. I'll fuckin'
> bang [shoot] him right here. That's on my dead father and
> mother…. I did fifteen, eighteen [years in prison] in my life, I'll
> do another fifteen, I don't give a fuck….I ain't gonna play with
> him….Now here's another thing Matty said. I'm gonna say what
> he said but whatever he said I'm gonna say right in front of you so
> you'll know. This way here you dropped what?
>
> WHITE: Guns.

The excerpt ends with Mr. White and Simone discussing how the threats against them seemed to

be growing worse.

The conclusion that Detective Tutungian draws from the cited excerpts is anything but

reasonable. First, **Mr. White** does not say anything that remotely resembles a threats of

7

violence. Second, to the extent that Simone says anything about violence, from the context of

the conversation, it is clear that he is talking about defending himself against any future violent

actions that might be taken against him.

Another misleading allegation about Mr. White's alleged violent past appears on page 43,

¶ 53, where Detective Tutungian alleges under oath:

> SIMONE has noted WHITE's credentials for violence. SIMONE
> rhetorically warned his putative enemy against challenging
> WHITE: "Fuckin' him too, he said, he [Spagnolo] wants to fuck
> with Franny [White]. Franny will punch his roof in, the truth.
> Franny, he's got Franny, he's got Franny at the point of no return
> and that's a shame. That a guy that don't fuckin' bother nobody."
> [Citing tape 2, dated 10/21/00, at p. 4. ]

Tutungian then goes on to opine that, "In this context, 'bother' means that WHITE does not

challenge the business of any other LCN member but instead follows LCN protocol."

But Tutungian's proposed and nefarious definition of the word "bother" has absolutely no

rational basis in the transcript – from the context of the conversation, it is clear that Simone

believed it was unfair for anyone to threaten Mr. White because he does not "bother" anyone in

the traditional sense. In other words, it was unfair to threaten Mr. White because he is not a

violent person. To be sure, one need look only a few pages further in the same transcript to see

that, on that same day, Simone had expressed his regret that Mr. White had been threatened in

the first place. See tape 2, dated 10/21/00, p. 11 (Simone says of Spagnolo, "He's gonna care.

He's gonna care.... – and look at [Franny] —Poor Franny, I got him in jeopardy all the time.")

Moreover, Simone's comment that Mr. White would "punch his roof in" is nothing but

tough talk amongst two men that were discussing threats that had been made against them. See

also id. at p. 9 (Gioacchini -- obviously upset about comments Spagnolo had made -- says to

8

Simone, "[Spagnolo wanted to know] what fuckin' Didi [Gioacchini], Freddy [Simone] and Franny [White] were doing down at that fuckin' club…in [Spagnolo's] town.")

Finally, on pages 10-11, Tutungian alleges that "police recovered a handgun from WHITE's armoire in a bedroom exclusively occupied by him when they executed a search warrant at his residence on December 7, 2000." What the detective omits, however, is that Mr. White had a valid FID card that entitled him to possess the firearm, and that he was not charged with a crime. Further, this Court must note the reason why Mr. White armed himself: as the prosecution's evidence shows, in the days and weeks preceding the search, Mr. White had received threats to his very own life. The only reasonable and logical conclusion to draw from his (lawful) possession of a firearm is that he sought to protect himself.

## B.   The Nature and Circumstances of the Charged Offense Do Not Weigh In Favor of Detention.

Importantly, Mr. White is **not** faced with charges that trigger the rebuttable presumption that he poses a risk of flight. See 18 U.S.C. § 3142(c). Other circumstances also show that the nature of the charged offenses do not otherwise weigh toward detention:

### 1.   The Indictment Does Not Allege Any Acts of Violence.

It should not go unnoticed that, despite the numerous insinuations of threatening or violent conduct found in Detective Tutungian's affidavit, the Indictment is entirely devoid of any specific allegation that Mr. White ever engaged in such conduct.

### 2.   Mr. White's Alleged Connection to Organized Crime Does Not Warrant Detention

Without a doubt, the prosecution is sure to tell this Court that Mr. White should be detained because he has connections to LCN. As this Court likely knows, alleged "membership in the Mafia [is] a factor militating in favor of detention." United States v. DiGiacomo, 746

9

F.Supp. 1176, 1182 (D.Mass. 1990). But the prosecution has not alleged that Mr. White was a **member** of LCN: it has alleged only that he was an "earner" for it. See Indictment, ¶ 3(f)(describing Mr. White as an earner and "associate"); see also ¶ 3(c)(defining an associate as one "who, although not made members of [LCN], were members of the [alleged RICO] enterprise; and they performed necessary and helpful roles in the Enterprise and served as insulation from criminal exposure for Soldiers....") The distinction is one of great consequence – and one that militates **against** detention. An "earner" or "associate" has not been inducted into the LCN, nor has he satisfied whatever criteria might be necessary to obtain membership.[3]

To the extent that this Court does consider the allegation that Mr. White is an "earner", that allegation does not justify detention, particularly when weighed against all of the relevant evidence. See, e.g., Patriarca, 948 F.2d at 792-95. As the First Circuit has explicitly recognized, even defendants who hold high-level leadership roles in the Mafia are entitled to release if the facts so warrant. See id. at 795 ("But mention of the Mafia is insufficient, in itself, to carry the day for the government....")

## 2.     The Applicable Guidelines Do Not Add Up to a Substantially Lengthy Sentence.

Under the applicable Sentencing Guidelines, Mr. White faces a Guideline range of 41 to 51 months if he enters a plea, and a range of 57 to 71 months if he goes to trial and is convicted of every offense. See U.S.S.G. § 2E2.1 (base offense level of 20; none of the enhancements apply based upon the allegations of the Indictment); § 3D1.4 (at a maximum, and assuming that

---

[3] One's alleged status as an "earner" is a far cry from someone who holds a leadership role. See, e.g., DiGiacomo, 746 F.Supp. at 1182 (noting that leaders and other higher-ups pose a threat to the community because of their ability to direct the criminal activity of others).

10

Mr. White pleads or is found guilty of multiple counts, 5 levels may be added under the grouping rules).

### C.      The Strength of the Prosecution's Case Does Not Weigh in Favor of Detention.

The evidence proffered by the prosecution – most notably, Detective Tutungian's affidavit – does not show that the prosecution has a strong case against Mr. White. In fact, very few of his allegations concern the charged offenses. Instead, the focus is clearly on the factors that this Court will consider in deciding whether to detain Mr. White. As such, this factor should not weigh in favor of detention.

### D.      There is No Evidence that Mr. White will Obstruct Justice.

Despite the prosecution's earlier statement that it would show Mr. White will obstruct justice if released, the prosecution has not come forward with a shred of evidence to support the allegation.

### E.      Lesser Conditions Will Suffice to Alleviate Any Risk of Danger or Flight.

To ensure that pretrial detention is reserved for the rare case, § 3142(c) mandates that Mr. White be "subject to the least restrictive" condition(s) that "will reasonably assure the safety of any other person and the community." This Court must find the least restrictive measures by progressing step-by- step through the conditions set forth in 18 U.S.C. § 3142. See United States v. Maull, 773 F.2d 1479 (8th Cir. 1985).

In addition to those highlighted above, additional facts show that Mr. White can be safely released without resort to detention, or the most restrictive of conditions: according to the Indictment, Mr. White's last alleged criminal act occurred in the fall of 2001 – more than two years ago. Obviously, since there are no allegations of criminal conduct since then, Mr. White

does not present any risk at this time. Also, as the prosecution is well aware, Mr. White has traveled frequently since December 2000, when his home was searched and he learned he was a target of law enforcement. Each time, Mr. White returned home to his family and friends, and there is no indication that he intends otherwise now.

With these principles and facts in mind – and if this Court finds that there is some degree of danger to the community or risk of flight --- this Court should release Mr. White, *albeit* subject to the conditions this Court deems appropriate.[4]

---

[4] In cases with far more egregious facts, and far weightier evidence, courts have ordered defendants released under specified conditions. For example, in United States v. DiGiacomo, 746 F.Supp. 1176 (D.Mass. 1990), the Court found a combination of conditions short of pretrial detention appropriate where government offered evidence that defendants were "made" members of the Mafia, specifically, a Capo and a Soldier. The defendants faced a myriad of serious charges, from RICO to conspiracy to distribute narcotics to extortion to subornation of perjury and obstruction of justice. See id. at 1179 n.1. Nevertheless, the Court ordered the defendants released pursuant to several strict conditions. It follows then that, as in DiGiacomo, this Court can adequately ensure the safety of the community, without resorting to the egregious measure of pretrial detention.

## IV.    **CONCLUSION**

Under the Bail Reform Act, 18 U.S.C. § 3142, this Court may, *inter alia*, (1) release Mr.

White on his own recognizance or upon execution of an unsecured bond; (2) release Mr. White

while imposing a condition or a combination of conditions of release; or (3) detain Mr. White

pending trial. Based upon the facts of this case, and for the reasons explained in more detail

below, only the former two options are appropriate. As such, the Defendant, Francis White,

respectfully asks that this Court deny the prosecution's motion for pretrial detention.

> Respectfully submitted,
> FRANCIS WHITE,
> By his attorneys,
>
>
> Richard M. Egbert
> BBO # 151800
> Patricia A. DeJuneas
> BBO # 652997
> 99 Summer Street, Suite 1800
> Boston, MA 02110
> (617) 737-8222

## CERTIFICATE OF SERVICE

I, Patricia A. DeJuneas, hereby certify that on December 4, 2003, I caused a copy of the forgoing to be served in hand upon counsel for the United States.

Patricia A. DeJuneas

**A**

## Kathleen H. Zuckerman

2 Warwick Circle ~ Andover, Massachusetts 01810
Fax (978)749-0665 ~ Home Phone (978)749-0665

December 02, 2003

The Honorable Judge Magistrate Alexander
U.S. Courthouse
One Courthouse Way
Boston, Massachusetts 02110

Dear Judge Alexander,

By writing this letter I hope to convey to you my experience with Francis White as pertains to his commitment to family in general and in particular, his son Alexander.

I am the mother of Alexander, who is 14 years old. Alex and his father share an extraordinarily close relationship built on respect and understanding. Franny has been a constant and reliable presence in Alex's life through the years regardless of the fact that we never married. Franny sees his son every other weekend from Friday through Sunday evening. He also visits with him every Wednesday. Every other week includes a Wednesday overnight visit after which Francis drives Alex to school in Andover in the morning. Franny also spends holidays, school vacations and summer weeks with Alex, much of the time including Alex's peers. Alex has a younger brother who was borne of my marriage. Evan is 8 years old. Franny has formed a close and loving relationship with Evan as well, including him in Alex's activities often. Evan has also stayed overnight on occasion with Franny who I trust to care for both of my children.

Our son Alex has been epileptic since he was five years old. His medical requirements have been great and have persisted throughout his childhood. Alex has required medication three times daily and has had dozens of tests to monitor his seizures. Franny has been supportive, proactive and available for Alex and myself during these difficult times. As an example, last Thanksgiving Alex awoke with a seizure so severe that he fell and dislocated his elbow. Post-seizure Alex slept for a full nine hours. Franny came to my home in Andover and sat in Alex's room so that my younger son could spend the holiday as planned with his aunts, uncles and cousins, thereby lessening the trauma for him and allowing Alex the rest he required.

With Alex's safety in mind, Franny accompanies Alex to each ski lesson to monitor seizure activity, thus allowing Alex to participate in a sport he loves. Franny himself does not ski but drives Alex to and from Loon Mountain every other weekend to allow Alex to enjoy this activity.

Because of Alex's medical condition he has required special education modifications in the Andover school system. Franny remains an integral part of Alex's support team, attending meetings and conversing with Alex's teachers and the school administrators whenever necessary.

Franny is an asset to his family and community in many ways. He is the sole provider for his 87 year old mother and visits her in her nursing home every day. He is committed to his son. He is not a danger to the community nor would he flee from his considerable responsibilities.

Sincerely,

Kathleen H. Zuckerman
Kathleen H. Zuckerman

December 2, 2003

To Whom It May Concern:

I am writing to you on behalf of my dear friend Francis P. White and ask that you please consider my input in the matter currently at hand.

Frannie and I met in the summer of 1995 and subsequently formed a friendship that continues to this day.   Having spent a great deal of time with him I have come to know him, as many do, as a person that will always be valued in my life.

There are so many things that I can say about him and who I believe he is as a person that quite frankly I could fill pages.   However, I will not do that, as I'm sure you have a number of other letters to read.   Instead I will tell you the things that always impressed me most about him and still do.   He is a devoted son to his ageing mother and without a doubt the most dedicated father a child could have.

Frannie spends time with his mother and watches out for her needs.   By living so close to her he is able to see her often, which is extremely important to an elderly person, and he made sure she had a home health aid and care when she was living at home.   He runs errands for her and accompanies her to her doctor's appointments.   On holidays, it would be easy for him to go to places he is invited but instead he chose to stay home so she would have family around and would be comfortable.   Although she is in elderly care now, she was able to live in the home she had known all of her life for more years than most due to the devoted attention of her son.

As a father I doubt you will find one more involved and dedicated than him.   His two sons are his main priorities in his life and will always be.   Anthony, his older son, was already an adult when we met so I cannot speak to his involvement in the early years.   I can say that what I did witness was his guidance of Anthony towards college or a career and that he has high hopes for him.   Anthony is now a successful young man and I believe it is in part because of his father.

His younger son Alex was only 5 when I met him and it is this relationship that I can truly attest to.   Frannie spent a great deal of effort ensuring that he would have more than the average 'every other weekend' with his young son. He was able to secure that as well as every Wednesday of which he **never missed a visit.**    In addition to that, he made sure he attended all of Alex's school events from parent/teacher conferences, dropping off and picking up from dances just to hear about them, soccer and basketball games, assemblies, after

school ski club, etc. **It didn't matter what else was going on in Frannie's life, if there was an opportunity to be with Alex he was there.**   When Alex did have his scheduled visits Frannie would make sure that Alex and he did activities together including days at Wingaersheek Beach where they would hunt for crabs, fishing off the piers in East Boston, Red Sox games and enrolling him in skiing lessons which is a hobby Alex continues to enjoy to this day.   In addition to the weekly time, they have spring and summer vacation weeks for which he always plans something fun that Alex will love like the time they went on Disney's Big Red Boat. The vacations are all about 'what Alex will like' and not what is most convenient for his father. As Alex has grown up he continues to want to spend more and more time with his father and Frannie is always there for him. It is because of his love and involvement (as well as his mothers) that Alex is the sweet and loving young man he is today and will grow to be an outstanding adult.

I ask that you consider these things about Frannie as you review all of your information. I would challenge you in this day and age to find a son who makes his mother such a priority in his life. The bigger challenge would be to find a father who is as doting, loving and involved as he is in their child's life. These days parents are more apt to put their child in front of a video game or television and go on about their life. Frannie has chosen the opposite, he has proven to be there every step of the way and continues to go above and beyond for his sons, which is a rare quality.

I thank you in advance for your time in reading this letter and for your consideration in this matter. If you have any questions please do not hesitate to contact me.

Regards,

Keri A Cassidy

45 Marcia Jean Drive
Tewksbury, MA 01876
Tel. 978 640 9040

December 3, 2003

The Honorable Joyce London Alexander
United States District Court
District of Massachusetts
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 7410
Boston, MA 02210

Re:    Mr. Francis P. White

Dear Judge Alexander:

Please accept this letter in support of the request for bail to be made by Attorney
Richard Egbert on behalf of his client, Francis P. White, on December 4, 2003.

I am a close, personal friend of Mr. White, having first made his acquaintance in
1981, some 22 years ago. Throughout those years, Franny and I have maintained a
continuous and close friendship, during which I have come to know Franny very well,
and I consider him to be among my closest and most cherished friends. Through our
friendship, Franny has come to be known by many of my friends and family members,
each of whom has a fondness and high regard for him.

Franny is a kind, caring, intelligent, courteous, honorable and compassionate man,
with an extraordinary love for and commitment to his two children, Anthony, age 29, and
Alex, age 14. I know both Anthony and Alex, who are wonderful and loving sons to their
father, and each of whom is bright, personable, intelligent, responsible and respectful in
all ways—traits which I know were instilled in them by their father and through his
example. Franny has been especially close to his youngest son, Alex, throughout his life,
seeing him during most weeks and weekends, vacationing with him and Anthony, and
participating actively in Alex' schooling and school-related activities. Alex lives in
Andover, MA with his mother, Kathleen Zuckerman, and attends school in Andover.
Franny is known to Alex' teachers, and loved by Alex' stepbrother, Evan. Franny
routinely drives Alex to school on mornings following Alex' overnight visits to Franny's
home in East Boston, or routinely collects him from school prior to visits. Franny is in
every way a devoted and responsible father to his children.

Until recently, Franny's mother, Gilda White, who is in her late eighties, resided
in one of the units of the multi-family home in which Franny resides in East Boston.
Although the mother of three sons, it has been Franny who has been Mrs. White's
primary provider and caretaker on a daily basis for the past several decades. This
summer, Mrs. White took ill, and has since been admitted to and confined to a

convalescent home in East Boston. Franny was necessarily appointed her Guardian or Conservator during Mrs. White's illness, and remains her Conservator. It was through Franny's efforts and perseverance that Mrs. White has received the care she now requires, and admittance into the facility in which she presently resides in order to receive that nursing care. I know that Franny has visited her on a daily basis since taking ill, and has actively participated in the decisions being made for her by her doctors and caretakers. He is a devoted and loving son to his mother, and has always been. He and I have spent many an hour discussing his great concern for his mother and his efforts in obtaining the best care available to her.

I know Franny to have extremely close ties to his family and his community of East Boston. Franny, his mother, his son Anthony, and Anthony's mother, Rosemarie, with whom Franny continues to maintain a close friendship, all reside there, as do other relatives of Franny. The bond between Franny, Anthony and Alex is extraordinarily strong and close. The elderly Mrs. White is completely dependent upon Franny for her care and companionship. Franny would never willingly abandon or otherwise leave his children or his mother.

I have never known Franny to be associated with or connected to any illegal activity, and to my knowledge, he has never been in any trouble with the law, nor charged with any crime, until now.

I cannot state strongly enough my very deep respect, admiration, and affection for Franny White for all of the good that he has done and continues to do, not only concerning his own family, but for others, including myself, as well. I have every faith that he would comply with any terms imposed by this Court as conditions of his bail, and I pray that your Honor will grant him bail so that he may continue to support and care for his children and mother, and so that those of us who love and care for Franny can love and support him through this ordeal.

Sincerely,

Monica Gilardi

Rose Marie White
286 BrandyWyne Drive #1
East Boston, MA 02128

December 3, 2003

To: Judge Alexander
Federal Court House
Joe Moakley Building
South Boston, MA

Your Honor:

My name is Rose Marie White and I've known Francis P. White for over 45 years. We
grew up together as childhood sweethearts, were married and had a beautiful child
together.  Although our marriage did not work out, we have always maintained the
highest respect for each other.

Franny is a good man, and a perfect gentleman, and is my #2 man next to God. I put
my faith in God, but if I had to trust anyone on earth, I'd put my faith in Franny.

If I can be of any assistance, please feel free to contact me.

Sincerely,

Rose Marie White

Rose Marie White
(617) 567-8995

DECEMBER 3, 2003

Dear Judge Alexander,
My name is Robert White
Residing at 404 Broadway, Unit #201,
FLAX Pond Condominium, Lynn, Ma. 01904.
I'm the brother of Francis White
who is scheduled to appear before you
tomorrow concerning a bail request.
I believe he should be granted
bail because he is innocent of
charges brought against him. He
is not a flight risk because of
family responsibilities, and his lack
of Record in criminal activities
shows he wouldn't be a threat
to the community.
Francis and I were raised in
East Boston and were very close until
I enlisted into the military. We
remain close today. My brother
has a younger son named Alex
who is a teenager & is very dependent

(2)

This past year, Francis has been supportive of Kathleen, Cely's mother, as she coped with the emotional duress of divorce. My brother, Francis put the past behind him and concentrating on his son's well being & that of his mother. He also, developed a special relationship with Evan, Kathleen's son by her marriage to her now ex-husband.

My brother is also greatly involved with our mother's welfare. Our mother, Hilda White has recently been placed in the Don Orione Nursing Home for her care since she is unable to live independently any longer. Francis has guardianship over all her affairs. He received this through the appropriate courts in Massachusetts. He visits our mother regularly to see to her

upon his father for the nurturing
+ direction he receives from him.
My brother, Francis went through a
very difficult time to maintain a
relationship with his son, Alex when
the boy's mother married + wanted
Francis out of Alex's life. My
brother endured great stress and
allotted much time and money to
maintain his parental role with Alex.

needs, I and another doctor, Thomas also visit. A fourth son residing in Florida year round & has little direct contact with our mother.

Francis has nothing on his record but minor Traffic violation He hasn't a hint of a criminal past for someone charged with these serious crimes.

Sincerely

ROBERT R. WHITE

Robert R. White

**ROSALBA MARTIGNETTI, R.N.**
**495 REVERE BEACH BOULEVARD, UNIT #2**
**REVERE, MA 02151**
**(781) 289-8883**

December 3, 2003

TO WHOM IT MAY CONCERN:

I have known Francis White personally for ten years.  In that time, I came to know Franny's gentle nature through social interactions and personal conversations resulting in a meaningful friendship.

I have known Franny to take an active role in his children's lives by keeping the lines of communication open, being involved in their activities and always meeting their needs first.  He is the type of father who fosters growth and independence in his children by providing them with the necessary tools to deal with life's fluctuations and make responsible decisions.

Most recently I have recognized Franny as a solid foundation and source of comfort for his family, especially his mother, when making major healthcare decisions due to her failing health.  He was not afraid to seek advice and knowledge from professionals and others who had similar experiences in order to meet his mother's best interests with the circumstances at hand.  Throughout this turbulent time, Franny was always mindful to consider his mother's wishes above his own and assist his family to cope by attending to their emotional needs.

As a friend, Franny has been a source of encouragement and support.  He has been one to provide logic and reasoning to solve problems when any were difficult to identify.  Through interactions with him I have discovered new strengths within myself and have been able to overcome many obstacles.

Francis White is a man of compassion, patience and tolerance.

If I may be of any further assistance, please do not hesitate to contact me.

Sincerely,

Rosalba Martignetti

# DON ORIONE HOME . Skilled Nursing and Rehabilitation

*Medicare - Medicaid   & JCAHO Accredited*

December 3, 2003

To the Honorable Judge Alexander:

At the request of Frank White, please accept this letter on behalf of Mrs. Gilda White. Mrs. White is a Resident of the Don Orione Nursing Home. She is visited regularly by her son Frank White who is her temporary legal guardian. She looks forward to his visits and her time with him.

Please contact me directly if you require any additional information.

Sincerely,

Denise Roberts, LSW
Department of Social Services

Tullio A. Capasso, Esq.
33 Beachview Road
Boston, MA 02128
(617) 569-4538

December 4, 2003

Judge Marianne B. Bowler
John Joseph Moakley United States Courthouse
1 Courthouse Way - Suite 2300
Boston, MA 02210

Re:    **Bond Hearing for Francis P. White**

Dear Honorable Judge Bowler:

I submit this letter to you today in support of Francis P. White's request for bond. I support his request without reservation.

I have known Mr. White for over twenty years, both as my East Boston neighbor as well as the father of one of my very close friends, Anthony White. During the past twenty years, I have known Mr. White to be a dedicated father, both to Anthony and also to his younger son, Alex. Mr. White has always encouraged his sons to strive for excellence in all of their endeavors, especially in the pursuit of both formal and informal education. I am also personally aware of the conscious effort Mr. White has made to culturally broaden both of his sons' horizons. I must say that as a graduate of Boston Latin School and as a member of the bar of the Massachusetts Supreme Judicial Court, I would not be where I am today without the assistance of my parents or individuals such as Mr. White, individuals who stress the virtues of hard work, discipline, and self-sacrifice in the pursuit of higher goals.

Furthermore, I am personally aware of Mr. White's dedication to his mother, Gilda White, whom he lived with up until very recently. Ms. White currently resides at the Most Blessed Don Orione home in Orient Heights, and I am personally aware of Mr. White's regular visits to the home to visit her. Since both Ms. White as well as Mr. White's young son, Alex, regularly depend on Mr. White in many aspects of their daily lives, and since I am aware of his tremendous dedication to them, I fully support his request to be released on bond as to be set by Your Honor.

Thank you for your consideration of my recommendation and please contact me directly with any questions you may have.

Very truly yours,

Tullio Capasso

Tullio Capasso, Esq.

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

J. OWEN TODD
Email: jotodd@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

December 3, 2003

Honorable Joyce L. Alexander
United States District Court
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 7410
Boston, MA 02210

Re:    Francis P. White

Dear Judge Alexander:

I understand that Francis White has been charged with a criminal act by the United States Government and that there will be a setting of bail in Mr. White's case.

Over the last twenty years, I have represented Francis White in domestic relations matters; first his divorce and then a number of attending matters thereafter. In that context as well as a social context, I have come to know him as a very loving and caring father and marvelous provider for his two sons, Anthony and Alex. He has also provided affectionately and financially for his mother who is now in her 80's and is in a convalescent home. Mr. White is the closest family his mother has and he visits her pretty nearly every day.

More importantly, I suppose in the instant situation, is the fact that Francis White has never been convicted, or so far as I know even charged, with a crime. He has always impressed me as a peaceful and at peace person as well as a responsible member of the community.

Very truly yours,

J. Owen Todd

JOT:lmb

Dec. 2nd 2003

Lydia Shire
Chef - Co Owner
of
Locke Ober &
Excelsior Rest.

To Whom it May Concern,

I have had the priviledge to know Francis White for the past 14 years. He has been a friend, a warm individual, a true gentleman in my establishments... I KNOW what an excellent Father he has been

to his children, as we talk about
them often — sharing stories.
Franny is generous .. something
I have noticed over these years,
funny and as far as I am
concerned ... Someone who would
be welcomed anywhere .. as
a truly great Patron. Certainly,
Boston is his home and it would
be hard .. very hard to even imag-
ine him as a danger of any
sort or a risk of flight.
        His family is very concerned

and I hope you will consider
my observations .

Sincerely,

Lydia Shire

Chef Co Owner.. Excelsior
formerly Biba





**Generations of Fine Wines and Spirits**

To Whom It May Concern:

I am writing to express my support for Francis White, whom I understand is currently in custody resulting from criminal charges that have been made against him.

I have known Francis for fifteen years, and I fully support his release from custody. He is not a risk of flight. In fact, he is just the opposite.  He has a very close relationship with his sons, and he is a true family man. I frequently see Francis in social settings, and almost always, his family and friends surround him. He has very strong and enduring ties to the Boston area.

I also believe that Francis does not serve any threat to the community. For as long as I have known him, he has been a valuable member of the community. I have attended many charitable functions with him, and he is always generous with his time, support and other contributions.

Sincerely,

Harvey Allen
PRESIDENT & CEO

**M. S. WALKER, Inc.  •  20 Third Avenue, Somerville, MA 02143-4450**
**Telephone (617) 776-6700  •  Fax (617) 776-5808**

## *Executive Travel and Tours*

*342 Bunker Hill Street, Unit 3H, Boston, MA 02129*
*(617) 241-8327*

December 3, 2003

I am writing this letter in support of Francis White.

As a Boston citizen, and a small business owner, I am proud to call Fran White, an associate and a friend. His admirable and gentle loyalty to family, friends and community is an anchor of his admirable character. As a loving and committed father of two boys, and the son of a mother in ill health, Fran has deep ties to the Boston area where he has been a life-long resident. The kind and gentle nature, which endears Fran to his friends, is the same attribute that makes him a critically needed caretaker for his family, at a time that he is greatly needed.

I respectfully request, as a community member, that Fran be released on bail, so that he may continue his duties as father, and his caretaking duties as a son, as well as fairly mount a defense to the charges against him. I am so confident in Fran's commitment to family, community, as well as his sense of integrity and pride, that I would personally guarantee his bail to facilitate his release while he awaits continuing proceedings.

Fran has been an upstanding and law abiding citizen, with no criminal record, in his life-long residency in Boston. There is no evidence or insinuation that he would not conduct himself in the same respectful and forthright manner that he has in the past. Considering his unblemished record, his local family ties, and the depth of his character, I would once again request, that Mr. White be released on bail while waiting further proceedings.

Respectfully,

Kimberly Anne James
President
Executive Travel and Tours

Gregory Cioffi, M.B.A.
*Certified Public Accountant*

53 BOARDMAN STREET
EAST BOSTON, MA 02128
TELEPHONE:          (617) 567-1118
FACSIMILE           (617) 567-0350

December 3, 2003

Re:   Francis White

To Whom It May Concern:

Please be advised that I have known Francis White for several years
and that I can say, without reservation, that Mr. White has demonstrated
himself to be a man of principle, integrity and character. He always
conducts himself in an honorable manner and treats all acquaintances
as he expects to be treated.

I have the utmost respect for Mr. White and do not hesitate to give him
my highest recommendation.

If you should require any additional information, please feel free to
contact me at any time.

Sincerely,

Gregory Cioffi

LAW OFFICE

OF

# MICHAEL A. CIOFFI

452 BENNINGTON STREET

EAST BOSTON, MASSACHUSETTS 02128

| | |
|---|---|
| TEL | (617) 561-0055 |
| FAX | (617) 567-0350 |
| PAGER | (617) 228-2538 |

December 3, 2003

TO WHOM IT MAY CONCERN:

Please be advised that the undersigned has known Francis White personally for some 35 years and in a professional capacity since my admission to the Bar in 1980. Mr. White has always presented as a gentleman. Mr. White is truly honorable. He has a devoted sense of family and of community, consistently conducting himself with integrity and in such a way as to earn the respect of those who relate to and with him. I have personal knowledge of his role as caretaker to his elderly mother and to the touching and supportive role as father to his two sons.

Any and all deference should be bestowed upon Mr. White.

If I may be of any further assistance, please do not hesitate to contact me.

Respectfully,

Michael A. Cioffi
MAC/tas



# V. Cirace & Son, Inc.

173 North Street                    Boston, Ma. 02109

Purveyors & Importers of Fine Wine,

Spirits and Gift Baskets

Est. 1906              617-227-3193        Fax: 617-227-6941

December 2, 2003

To whom it may concern,

My name is Jeffrey T. Cirace and I am president of V. Cirace & Son, Inc. located at 173 North St. in Boston. My family has operated our business here since 1906. Mr. Francis White has been a customer and friend of my family for over forty years. What I remember most about "Franny" as a child was the respect and kindness he showed toward my father, especially in the last year of his life when he was ill with a rare lung disease. Mr. White has always been the perfect gentlemen when he visited our shop toward myself, my sister and our employees. I can also attest to Mr. Whites character as a parent, since he frequently would visit with his sons Alex and Anthony who I truly enjoyed talking with and watched grow into good young men. Mr. White and I would discuss the trials and tribulations of parenthood, since I have a daughter who Mr. White has watched grow up as well. Thank you.

Sincerely,

Jeffrey T. Cirace

# E-Z TAX & BOOKKEEPING SERVICE

Tel# (617) 567- 5600                                                    452 Bennington Street
Fax # (617)567-0350                                                   East Boston,  MA  02128

December 3, 2003

To Whom It May Concern:

Please accept this letter as character reference for Francis White.  Mr. White has been an acquaintance of mine for the past several years.  During that period, I have known him to be generous and respectful to all those around him.  Being father of two children, he has never passed by without asking how the family is doing.

As community member, I feel that Mr. White has always conducted himself in an honorable fashion and with the outmost respect for others.  In my opinion, I do not believe that Mr. White will pose any threat to the community if released.

Sincerely,

Ralph Rizzo

**P**

U.S. Magistrate
Judge Joan Alexander

Dear Judge
  I am a friend of Manny
White and truly believe that he
would never leave this area. He is
a gentle soft spoken man, who
is a huge presence to his family.

  He is a loving and devoted
father to both his sons Anthony,
and Alex who is only 14 years old

  Alex is with Max on Wednesdays
and every other week-end. In between
between they are in constant contact
with each other

  His mother who is in a
nursing home, enjoys regular
visits from Man—

II

His constant dedication and loving attention to his family would prohibit him from being a risk to his bail

Your honor, I humbly ask that you allow Mr. White bail so that his family who are so dependent on him will not suffer from his absence

Thank you
Dolly Sturman

Dear Judge,

As a devoted mother myself, I can tell you that Mr. Fran White would never voluntarily abandon his 2 sons Alex and Anthony.

He is a strict father who demands manners and respect from his children. He is very much apart of their lives and totally focused on their well being. His sons rely on him for companionship and depend on him for all their needs. Since Fran White lives for his sons well being, he would not

(2)

abandon them. He would
not disappoint + devastate
them by running away.

If White is a compassionate
man who would not leave
his family and friends.

Very truly
Bailey Moruzzi

B. Moruzzi
330 Comm. Ave.
Boston, MA 02115

Carol Bullock
9211 N. Chelsea Drive
Plantation, Florida 33324

To: US Magistrate Judge Joan Alexander

Dear Judge,

I know Franny White to be an individual who has many ties in the Boston area.
His commitment to his family and friends is extremely strong. He is an incredible
son to his 86 year old mother who he visits daily in a nursing home in East Boston.
When she moved out of her apartment, he donated all her furniture to a local East Boston
Charity.

He is very involved in the lives of his sons Anthony and 14 year old Alex. He is a very
devoted and dedicated father. His family is the love of his life.

Sincerely

Carol Bullock

S

Wednesday, December 3, 2003

U.S. Magistrates
Judge Joan Alexander

Dear Judge Alexander,

Since Fran White has been a lifelong resident of the Boston area, he would never flee bail. He is deeply rooted in his community and is a fantastic father and son. Mr. White is deeply involved with his two children and is a constant visitor to his eighty six year old mother. He would never leave them, nor jeopardize his relationship with them. I urge you to grant him bail.

Very truly yours,
Jane Epstein
11 Elmwood Ave.
Cambridge, MA 02138

**TRACEY A. SCHRAFFA**
**1129 NORTH SHORE ROAD**
**REVERE, MA  02151**

December 3, 2003

TO WHOM IT MAY CONCERN:

Please be advised that I have known Francis White for approximately 20 years.  I have found Mr. White to be a man who is very respectful, caring and intelligent.  He is a wonderful father, who devotes a lot of time to his children and he is a great caretaker to his elderly mother.

Approximately 4 years ago, while I was vacationing in Florida, it came to my knowledge that Mr. White was also there vacationing with his son.  He invited my friends and me to join him and his son at the hotel restaurant where they were staying.  Mr. White, as always, was very hospitable and kind.  He made our vacation even more enjoyable.  It is a pleasure to be in Mr. White's company.

Please do whatever you can for Mr. White.

If I may be of any further assistance, please do not hesitate to contact me.

Thank you for your time in this regard.

Sincerely,

Tracey A. Schraffa

Wednesday, December 3, 200?

U.S. Magistrates
Judge Joan Alexander

Dear Judge Alexander,

Since Fran White has been a lifelong resident of the Boston area, he would never flee bail. He is deeply rooted in his community and is a fantastic father and son. Mr. White is deeply involved with his two children and is a constant visitor to his eighty six year old mother. He would never leave them, nor jeopardize his relationship with them. I urge you to grant him bail.

Very truly yours,

Jane Epstein
11 Elmwood Ave.
Cambridge, MA 02138

December 3, 2003

To Whom It May Concern:

Mr. White has been a customer of ours for more than five years. He has shown us nothing but respect and admiration for our businesses, and our employees. We find Mr. White to be a pleasant and contributory member of our community.

Sincerely,


Jeff and Carmen Snell