UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

FRANCIS WHITE, et al.

Criminal No. 03-CR-10356-MLW

### AFFIDAVIT OF RICHARD M. EGBERT
### IN RESPONSE TO COURT'S MAY 7, 2004 ORDER

I, Richard M. Egbert, hereby depose and say:

1. I, along with my associate Patricia A. DeJuneas, represent Mr. White in connection with this case.

2. In this affidavit, I address my efforts to comply with ¶1 of this Court's February 26, 2004 Order ("Counsel shall confer and any discovery motions shall be filed by April 23, 2004.")

3. On or about December 30, 2003, my office received automatic discovery in this case, along with a discovery letter. The documents measure 9 inches in height, and include:

   (a) Written statements;
   (b) Fingerprint cards;
   (c) Defendants' oral statements;
   (d) Consent and statutory rights forms;
   (e) Defendants' criminal records;
   (f) Eight (8) search warrants, applications, affidavits, and returns;
   (g) Twelve (12) state law wiretap warrants with all their supporting documentation, affidavits, and orders;
   (h) Vague references to exculpatory information;
   (i) The identity of some, but not all, witnesses;
   (j) Various immunity agreements, proffer letters, plea agreements, and the like; and
   (k) various police reports.

4. Cases involving wiretap warrants, such as the instant one, routinely require many, many hours of work that other types of cases do not ordinarily require. In order to zealously represent Mr. White, we asked for additional time to review and analyze the discovery issues.

5. In early January, 2004, both my associate and I reviewed the discovery produced on December 30, 2003. We noted that many documents had been redacted, that the prosecution was refusing to disclose:

   (a) The identities of unindicted co-conspirators;
   (b) The identities of alleged victims;
   (c) The identities of grand jury witnesses who made exculpatory statements about Mr. White's alleged guilt; and
   (d) The criminal records of its case-in-chief witnesses.

6. Moreover, we noted that much of the information that had been produced had been produced in redacted form.

7. On January 13, 2004, the parties filed a Joint Initial Status Conference Memo, explaining that defendants had not yet been able to complete their review of the voluminous discovery.

8. Since shortly after Mr. White was indicted, I began conducting my own independent investigation and interviewed several alleged victims and potential witnesses. During those interviews, I learned that several people had testified before the grand jury in a manner that was exculpatory as to Mr. White.

9. With the various issues in mind that we had identified in our earlier review of the first round of automatic discovery as well as our own investigation, I, along with my associate, Patricia A. DeJuneas, spoke via telephone with Assistant United States Attorney Colin Owyang on January 14, 2004.

10. In particular, on January 14, 2004, Ms. DeJuneas and I discussed with Mr. Owyang the identity of who provided the "exculpatory information" referenced in the December 30, 2003 discovery letter and whether any additional disclosures of exculpatory evidence would be forthcoming.

11. We also discussed whether the prosecution intended to call expert witnesses, and if so, when it would produce discovery relating to such.

12. During this same conversation, Attorney Owyang advised us that we had been given "everything they're going to give us" and that the prosecution had already identified all of the information that had been withheld from automatic discovery.

13. On or about February 5, 2004, my office received additional discovery from the government: a stack of preliminary transcripts from intercepted communications that measures 12 inches in height.

14. In addition to the case pending before this Court, my office has many other cases pending in state and federal courts in Massachusetts, Rhode Island, and Connecticut. Many of these cases were brought long before the indictment against Mr. White.

15. In addition, my office represents co-defendant Frederick Simone in a case pending in the Middlesex Superior Court. That case involves the same wiretap warrants that are at issue in this case.

16. During the two detention hearings that were held in this case, factual issues arose that directly and materially impacted the pending motions to suppress we filed on Mr. Simone's behalf in the Middlesex Superior Court. With those factual issues in mind (particularly those relating to whether two of the purported targets of the wiretap were in fact informants), we filed a supplemental memorandum in the Middlesex case. In order to do so, we were required to carefully review many of the filings in this Court, as well as the transcripts from the two detention hearings.

17. In mid-April, my office was retained to represent a defendant in a federal criminal case in the District of Rhode Island. The indictment in that case, United States v. Gonsalves, et. al, Docket No. CR-03-75L, charges my client in several counts with conspiracy to defraud the United States as well as conspiracy to commit health care fraud.

18. At the time we were retained in the Gonsalves case, the trial was scheduled to begin on May 5, 2004, which left us with just a few short weeks to prepare for trial. On or about April 23, 2004, the Court (Lagueux, J.) continued the case until June, 2004. Since that time, the Court, for its own reasons, continued the trial again to a date yet to be decided.

19. In addition to tending to our busy caseload, my office is routinely involved in *pro bono* work. I am heavily involved with MACDL and its strike force; I have represented defendants in state and federal courts (including the case of United States v. Barone); and Ms. DeJuneas is currently drafting an amicus brief to the Massachusetts Supreme Judicial Court on behalf the American Civil Liberties Union of Massachusetts.

20. As I understand, co-counsel in this case have also been busy with heavy case-loads of their own.

21. With all due respect to this Court, it has long been my experience that discovery matters – including the timing for filing motions – are routinely handled by United States Magistrate Judges.

3

22. It has also been my experience that the Magistrate Judges have routinely permitted me, as well as other defense counsel, extensions of time to file discovery motions when additional time is requested.

23. I will – as I have always done – do my best, in accordance with my ethical responsibilities to Mr. White and all my clients, to abide by all orders this Court may issue.

SIGNED AND SWORN UNDER PENALTIES OF PERJURY THIS 11th DAY OF MAY, 2004.

_____
Richard M. Egbert

## CERTIFICATE OF SERVICE

I, Richard M. Egbert, hereby certify that I have caused a copy of the foregoing document to be served on Assistant United States Attorney Colin Owyang, Attorney Kevin Reddington and Attorney Robert George by first class mail, this 11th day of May, 2004.

_____
Richard M. Egbert

4