UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CR. NO. 03-10356-MLW |
| | ) | |
| FRANCIS WHITE (3) | ) | |
| A/K/A THE WHITE HAIRED GUY | ) | |

GOVERNMENT'S GENERIC JURY INSTRUCTIONS

The United States of America submits the attached requested
generic jury instructions pursuant to this Court's request.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

HEIDI E. BRIEGER
ERNEST S. DINISCO
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I, Ernest S. DiNisco, Assistant U.S. Attorney, hereby
certify that, by agreement on this date, I shall serve the
foregoing Government's Preliminary Requests for Jury Instructions
by causing a copy thereof to be hand delivered to Richard Egbert,
Esq., counsel for the defendant on December 3, 2004.

ERNEST S. DINISCO
Assistant U. S. Attorney

## COUNTS ONE AND TWO

### Overview of the RICO Statute -- 18 U.S.C. § 1962(c)

I will now turn to a discussion of the law applicable to the individual counts in the Indictment, and I will start with Counts 1 and 2, which charge violations of the RICO statute, formally known as the Racketeer Influenced and Corrupt Organization Act. A subsection of that statute defines the conduct that constitutes what the law refers to as a substantive violation of the RICO statute, and is charged in Count 2 of the Indictment. The term "substantive violation," as I use it in these instructions, refers to a criminal offense as defined by law, as distinguished from a conspiracy or agreement to commit that offense. Because a RICO conspiracy charge requires you to find that an agreement existed to commit a substantive RICO crime, I will start my discussion of Counts 1 and 2 with a discussion of the elements of a substantive violation of the RICO charge, even though that crime is charged in Count 2 of the Indictment. You will have to understand the elements of a substantive violation of RICO in order to consider and determine whether a RICO conspiracy existed, as charged in Count 1 of the Indictment.

> Subsection (c) of the RICO statute reads as follows:
> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity . . . .

1

18 U.S.C. § 1962(c); <u>United States v. Cincotti, et al.</u>, Crim. No. 84-293-K, Jury Charge of Honorable Robert E. Keeton (D. Mass. August 6, 1986); Sand, <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, ¶ 52.04, at 52-33 (1992).

## RICO -- Elements of the Offense

To convict the defendant of a substantive violation of the
RICO statute, as alleged in Count 2 of the Indictment, you must
find that the evidence has established beyond a reasonable doubt
as to the particular defendant the following five essential
elements:

**First:** An enterprise, as described in the Indictment,
existed on or about the time alleged in the indictment;

**Second:** The enterprise engaged in, or its activities
affected, interstate commerce;

**Third:** The defendant was employed by or was associated with
the enterprise;

**Fourth:** The defendant knowingly conducted or participated,
either directly or indirectly, in the conduct of the affairs
of the enterprise; and

**Fifth:** The defendant knowingly participated in the conduct
of the affairs of the enterprise through a pattern of
racketeering activity, as described in the Indictment; that
is, through the commission of at least two charged
racketeering acts within ten years of each other, or through
aiding, abetting, commanding, or causing the commission of
two such racketeering acts.

I will now discuss each of those five essential elements in

more detail.

Seventh Circuit Pattern Jury Instructions (1999 Ed.); Eleventh
Circuit Pattern Jury Instructions § 71.1 (2003 Ed.); Sedima,
S.P.R.L. v. Imrex, Co., 473 U.S. 479, 496-97 (1985); United
States v. Posada-Rios, 158 F.3d 832, 855 (5th Cir. 1998); United
States v. Hoyle, 122 F.3d 48, 50 (D.C. Cir. 1997); United States
v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995); United States
v. Console, 13 F.3d 641, 652-53 (3d Cir. 1993); United States v.
Alvarez, 860 F.2d 801, 818 (7th Cir. 1988); United States v.
Ruiz, 905 F.2d 499, 503 (1st Cir. 1990).

## The First RICO Element -- The Enterprise

First, the evidence must establish that the defendant under consideration was employed by or associated with an enterprise. The term "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. An enterprise may be a formal or an informal organization of individuals so long as they have associated together for a common purpose. The enterprise need not be a legal or legitimate entity. That is, an enterprise may consist of a group of individuals whose purpose is exclusively criminal.

In the present case, it is alleged by the Government that the defendant, and others, were associated in fact to form an enterprise, and that the enterprise was the New England Family of La Cosa Nostra, and consisted of the defendant and others.  To find that this association-in-fact existed, you must find that the alleged enterprise had an ongoing organization, formal or informal, and that its various associates functioned as a continuing unit for a common purpose.  This means that while individuals may come and go, the enterprise must continue in an essentially unchanged form during substantially the entire period alleged in the Indictment.

Note that the enterprise element is different from the pattern of racketeering activity element which I will define

4

shortly. While the proof to establish these elements may overlap, proof of one does not necessarily establish the other. Rather, the enterprise must be an entity separate and apart from the pattern of racketeering activity and continue to exist in the intervals between the alleged racketeering activities. However, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity. Morever, you may consider proof of the racketeering acts to determine whether the evidence establishes the existence of the charged enterprise. If such an enterprise existed, it makes no difference whether its purpose was legitimate or criminal.

Adapted from Jury Instructions for Civil and Criminal RICO Cases with Commentary, 1987 B.Y.U.L. Rev. 1, 6; see e.g., United States v. Blackwood, 768 F.2d 131, 137 (7th Cir. 1985); United States v. Ambrose, 740 F.2d 505, 512 (7th Cir. 1984); United States v. Lee Stoller Enterprises, 652 F.2d 1313, 1318 (5th Cir. 1981); United States v. Clark, 646 F.2d 1259, 1263 (8th Cir. 1981); State of Maryland v. Buzz Berg Wrecking Co., Inc., 496 F.Supp. 245, 247-48 (D. Md. 1980); United States v. Turkette, 452 U.S. 576, 583 (1981); United States v. Patrick, 248 F.3d 11, 18-19 (1st Cir. 2001).

## The Second RICO Element -- Interstate Commerce

As I stated previously, the Government must prove beyond a reasonable doubt that the RICO enterprise engaged in, or its activities affected, interstate commerce. Interstate commerce means trade or conducting business or travel between one state and another state. Therefore, interstate commerce includes the movement of money, goods, services, or persons from one state to another state. This may include, among other matters, the purchase or sale of goods or supplies from or to outside the state in which the enterprise was located, the use of interstate mail or wire facilities, or the causing of any of those things.

The Government may satisfy this element by proving either: (1) the enterprise engaged in interstate commerce; or (2) its racketeering activities affected interstate commerce. Here, the Government is alleging both prongs of the interstate commerce element: that is, that the enterprise, through its own gambling and extortion activities was engaged in interstate commerce; and that the racketeering activities of the enterprise, particularly the extortion, affected interstate commerce.

It is not necessary for the Government to prove that the defendant knew that the enterprise would affect interstate commerce, that the defendant intended to engage in or affect interstate commerce, or that each defendant engaged in, or his activities affected, interstate commerce. To establish the

6

requisite effect on interstate commerce, the Government is not required to prove a significant or substantial effect on interstate commerce. Rather, a minimal effect on interstate commerce is sufficient.

An enterprise is generally "engaged in commerce" when it is itself directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce. If you find that the evidence is sufficient to prove that the enterprise was "engaged in" interstate commerce, the required nexus to interstate commerce is established, and therefore the Government is not further required to prove the alternative, that the activities of the enterprise affected interstate commerce.

Drug trafficking and gambling are the kind of economic enterprise that affects interstate commerce. This is true even in instances where the drug dealing and gambling appear to be local in nature. Because of the national and international scope of the economic activity in illegal drugs, even local manufacture, distribution, and possession has been determined to have a substantial and direct effect upon interstate commerce. The depletion of assets of an interstate business by means of extortion has also been determined to affect interstate commerce in that the business then has less assets to use to purchase (if money was taken) items in interstate commerce, or to distribute (if product was taken) product in interstate commerce.

7

The Government is not required to prove all the circumstances outlined above. To satisfy this element, the Government need only prove beyond a reasonable doubt either that the enterprise was "engaged in" interstate commerce, or that the racketeering activities of the enterprise considered in their entirety had some minimal effect on interstate commerce.

Seventh Circuit Pattern Jury Instructions, p. 324 (1999 Ed.); 2B O'Malley, Grenig, Lee, Federal Jury Practice and Instructions, § 56.05 (5th Ed. 2000); United States v. Robertson, 514 U.S. 669, 671-72 (1995); United States v. Marino, 277 F.3d 11, 34-35 (1st Cir.), cert. denied, 536 U.S. 948 (2002); United States v. Riddle, 249 F.3d 529, 537 (6th Cir. 2001); De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001); United States v. Frega, 179 F.3d 793, 800-01 (9th Cir. 1999); United States v. Miller, 116 F.3d 641, 673-74 (2d Cir. 1997); United States v. White, 116 F.3d 903, 925 & n.8 (D.C. Cir. 1997); United States v. Beasley, 72 F.3d 1518, 1526 (11th Cir. 1996); United States v. Farmer, 924 F.2d 647, 651 (7th Cir. 1991); United States v. Norton, 867 F.2d 1359 (11th Cir. 1989)(collecting cases); United States v. Doherty, 867 F.2d 47, 68 (1st Cir. 1989); United States v. Muskovsky, 863 F.2d 1319, 1325 (7th Cir. 1988); United States v. Qaoud, 777 F.2d 1105, 1116-17 (6th Cir. 1985); United States v. Conn, 769 F.2d 420, 423-24 (7th Cir. 1985); United States v. Bagnariol, 665 F.2d 877, 892-93 (9th Cir. 1981); United States v. Long, 651 F.2d 239, 241-42 (4th Cir. 1981); United States v. Stratton, 649 F.2d 1066, 1075 (5th Cir. 1981); United States v. Rone, 598 F.2d 564, 573 (9th Cir. 1979); United States v. Zorrilla, 93 F.3d 7, 8 (1st Cir. 1996); United States v. Burgos, 254 F.3d 8, 11 (1st Cir. 2001); United States v. Fabian, 312 F.3d 550, 555 (2d Cir. 2002), cert. denied, 123 S.Ct. 1958 (2003); Bertoldo v. United States, 145 F. Supp. 2d 111, 118 (D. Mass. 2001) (Ponser, J.); 21 U.S.C. §§ 801(3-6).

The Third RICO Element -- Employed By or Associated With

The third element the Government must prove beyond a
reasonable doubt is that the particular defendant was "employed
by" or "associated with" the enterprise charged in the
Indictment.  The Government need not prove both. Either one is
sufficient to establish this element.

The term "employed by" should be given its common, plain
meaning.  Thus, a person is "employed by" an enterprise when, for
example, he is on the payroll of the enterprise (whether a legal
entity or not) and performs services for the enterprise, holds a
position in the enterprise, or has an ownership interest in the
enterprise.

"Associated with" also should be given its plain meaning.
[As stated in Webster's Third New International Dictionary (1971
ed.)]  "Associate" means "to join, often in a loose relationship
as a partner, fellow worker, colleague, friend, companion, or
ally . . . to join or connect with one another."  Therefore, a
person is "associated with" an enterprise when, for example, he
joins with other members of the enterprise and he knowingly aids
or furthers the activities of the enterprise, or he conducts
business with or through the enterprise, whether he is
compensated for his participation or not.  Although a person's
role in the enterprise may be very minor, a person will still be
associated with the enterprise if he knowingly joined with a

9

group of individuals associated in fact who constitute the
enterprise.

It is not required that the particular defendant have been
"employed by" or "associated with" the enterprise for the entire
time the enterprise charged in the Indictment existed.   The
Government also is not required to prove that a particular
defendant had a formal position in the enterprise, or
participated in all the activities of the enterprise, or had full
knowledge of all the activities of the enterprise, or knew about
the participation of all the other members of the enterprise.
Rather, it is sufficient that the Government prove beyond a
reasonable doubt that at some time during the existence of the
enterprise as alleged in the Indictment, the particular defendant
was "employed by" or "associated with" the enterprise within the
meaning of those terms as I have just explained them, and that he
knew of the general nature of the enterprise, and that the
enterprise extended beyond his own role in the enterprise.

United States v. Marino, 277 F.3d 11, 33 (1st Cir. 2002), cert.
denied, 536 U.S. 948 (2003); United States v. Zichettello, 208
F.3d 72, 99 (2d Cir. 2000); United States v. Tocco, 200 F.3d 401,
425 (6th Cir. 2000), cert. denied, 123 S.Ct. 2573 (2003); United
States v. Gabriele, 63 F.3d 61, 68 (1st Cir. 1995); United
States v. Console, 13 F.3d 641, 653-54 (3d Cir. 1993); United
States v. Mokol, 957 F.2d 1410 1417 (7th Cir. 1992); United
States v. Eufrasio, 935 F.2d 553, 577 n.29 (3d Cir. 1991); United
States v. Rastelli; 870 F.2d 827, 828 (2d Cir. 1989)(collecting
cases); United States v. Yonan, 800 F.2d 164, 167 (7th Cir.
1986); United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984);
United States v. Bright, 630 F.2d 804, 830 (5th Cir. 1980);
United States v. Herman, 589 F.2d 1191, 1194, 1198 (3d Cir.
1978); United States v. Forsythe, 560 F.2d 1127, 1136 and n.14

10

and n.15 (3$^d$ Cir. 1977); <u>United States v. McMonagle</u>, 437 F. Supp. 721, 723 (E.D. Pa. 1977).

## The Fourth RICO Element -- Conduct or Participate in the Affairs of the Enterprise

The fourth element the Government must prove beyond a reasonable doubt is that the particular defendant conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise. Such proof may include evidence that the defendant intentionally performed acts, functions, or duties which were necessary to or helpful in the operation of the enterprise. Thus, the Government must prove that the defendant participated in the operation or management of the enterprise itself or that he had some part in directing the enterprise's affairs. However, the Government need not prove that the particular defendant exercised significant control over or within the enterprise, or that he had a formal position in the enterprise, or that he had primary responsibility for the enterprise's affairs. Rather, "[a]n enterprise is `operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management" or carry out upper management's orders. Therefore, you may find guilty "all who participate in the conduct of [the] enterprise, whether they are generals or foot soldiers." An enterprise also might be operated or managed by one "who exerts control over [the enterprise]."

12

Adapted From 2B O'Malley, Grenig, Lee, <u>Federal Jury Practice and Instructions</u>, § 56.08 (5th ed. 2000); <u>Reves v. Ernest & Young</u>, 507 U.S. 170, 179-86 (1993); <u>United States v. Parise</u>, 159 F.3d 790, 796 (3<sup>d</sup> Cir. 1998); <u>United States v. Hurley</u>, 63 F.3d 1, 11 (1st Cir. 1995); <u>United States v. Wong</u>, 40 F.3d 1347, 1373 (2<sup>d</sup> Cir. 1994);  <u>United States v. Viola</u>, 35 F.3d 37, 41 (2<sup>d</sup> Cir. 1994); <u>United States v. Oreto</u>, 37 F.3d 739, 750 (1st Cir. 1994); <u>United States v. Weiner</u>, 3 F.3d 17, 23-24 (1st Cir. 1993); <u>University of Maryland v. Peat, Marwick, Main</u>, 996 F.2d 1534, 1539 (3<sup>d</sup> Cir. 1993).

The Fifth RICO Element -- Pattern of Racketeering Activity

The fifth element the Government must prove beyond a reasonable doubt to establish a substantive RICO violation is that the particular defendant conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The term racketeering activity is defined in the RICO statute and includes a long list of crimes that can constitute racketeering acts, including the offenses alleged as racketeering acts in the Indictment in this case.

As I have already stated, the Indictment alleges that the three defendants charged in the RICO counts of the Indictment committed 35 racketeering acts, many with subparts, including making extortionate extensions of credit, collecting extensions of credit by extortionate means; interference with commerce by extortion; interstate travel in aid of racketeering and the collection of unlawful debts. To establish a "pattern of racketeering activity," as alleged in Count 2 of the Indictment, the Government must prove three elements beyond a reasonable doubt with respect to a particular defendant:

**First:** The defendant intentionally committed, aided, abetted, commanded, or caused the commission of two or more of the racketeering acts alleged against that particular defendant in the Indictment. These two or more racketeering acts must have been committed within ten years of each other. In addition, one

14

of the offenses must have occurred within five years prior to November 20, 2003, the date of this Indictment. Your verdict must be unanimous as to which specific racketeering acts you find that a particular defendant committed, aided, abetted, commanded, or caused. Shortly, I will instruct you regarding the elements of each of the charged racketeering acts.

**Second:** The racketeering acts are "related;" that is, have the same or similar purposes, results, participants, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events. Two racketeering acts may be "related" even though they are dissimilar or not directly related to each other, provided that the racketeering acts are related to the same enterprise. For example, the requisite relationship between the RICO enterprise and a predicate racketeering act may be established by evidence that the defendant was enabled to commit the racketeering act solely by virtue of his position in the enterprise or involvement in or control over its affairs, or by evidence that the racketeering act benefitted the enterprise, or by evidence the racketeering act promoted or furthered the purposes of the enterprise.

**Third:** The racketeering acts themselves either extended over a substantial period of time or posed a threat of continued criminal activity. The Government need not prove such a threat

15

of continuity by any mathematical formula or by any particular
method of proof, but rather may prove it in a variety of ways.
For example, the threat of continued unlawful activity may be
established when the evidence shows that the racketeering acts
are part of a long-term association that exists for criminal
purposes or when the racketeering acts are shown to be the
regular way of conducting the affairs of the enterprise.

Moreover, in determining whether the Government has proven
the threat of continued unlawful activity, you are not limited to
consideration of the specific racketeering acts charged against a
particular defendant. Rather, in addition to considering such
acts you also may consider the nature of the enterprise, and
other unlawful activities of the enterprise and its members
viewed in their entirety, including both charged and uncharged
unlawful activities.

Seventh Circuit Pattern Jury Instructions (1999 Ed.); H.J. Inc.
v. Northwestern Bell Telephone Co., 492 U.S. 229, 242-43 (1989);
United States v. Posada-Rios, 158 F.3d 832, 856-57 (5th Cir.
1998); United States v. Polanco, 145 F.3d 536, 541 (2d Cir.
1998); United States v. White, 116 F.3d 903, 925, n. 7 (D.C. Cir.
1997); United States v. Wong, 40 F.3d 1347, 1375 (2d Cir. 1994);
United States v. Grubb, 11 F.3d 426, 439 (4th Cir. 1993); United
States v. Eufrasio, 935 F.2d 553, 566-67 (3d Cir. 1991); United
States v. Gonzalez, 921 F.2d 1530, 1540 (11th Cir. 1991); United
States v. Tillem, 906 F.2d 814, 822 (2d Cir. 1990); United States
v. Angiulo, 897 F.2d 1169, 1180 (1st Cir. 1990); United States v.
Salerno, 868 F.2d 524, 533 (2d Cir. 1989); United States v.
Indelicato, 865 F.2d 1370, 1382-84 (2d Cir. 1989)(en banc);
United States v. Pieper, 854 F.2d 1020, 1026-27 (7th Cir. 1988);
United States v. Horak, 833 F.2d 1235, 1239-40 (7th Cir. 1987);
United States v. Robilotto, 828 F.2d 940, 947-48 (2d Cir. 1987);

16

United States v. Qaoud, 777 F.2d 1105, 1115 (6th Cir. 1985);
United States v. Carter, 721 F.2d 1514, 1526-27 (11th Cir. 1984);
United States v. Provenzano, 688 F.2d 194, 200 (3[d] Cir. 1982);
United States v. Phillips, 664 F.2d 971, 1011-12 (5th Cir. 1981);
United States v. Lee Stoller Enterprises, Inc., 652 F.2d 1313,
1319 (7th Cir. 1981); United States v. Weisman, 624 F.2d 1118,
1121-23 (2[d] Cir. 1980); United States v. Elliott, 571 F.2d 880,
899 (5th Cir. 1978).

## Aiding and Abetting -- 18 U.S.C. § 2

With respect to my instruction on the essential element of a pattern of racketeering activity, you just heard me say that you must find that the defendant under consideration committed, aided, commanded, or caused the commission of at least two racketeering acts. Whereas, generally, to find that a defendant committed a crime you must find that the defendant engaged in conduct that satisfies each of the essential elements of the crime, the law also is violated by a person who either aids and abets another person's commission of the crime, or causes another person to commit the crime. In this case it is the Government's theory that the defendant aided and abetted some racketeering acts and substantive counts, and commanded and caused, by directing the activity of others, other racketeering acts and substantive counts.

The statute that imposes criminal responsibility on an aider and abettor, or on a person who causes a crime to be committed by another, provides in two parts as follows:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

As used in the above provisions, an "offense against the United States" simply means a federal criminal offense.

18

These two statutory provisions mean that the guilt of an accused in a criminal case may be established without proof that he personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by him through direction of another person, or by acting in concert with, or under the direction of, another person in a joint effort or enterprise.

So, if the acts or conduct of an agent, employee, or other associate of a particular defendant are willfully directed or authorized by another defendant, or if that defendant aids or abets another person by willfully joining together with such person in the commission of a crime, then the law holds that defendant responsible for the acts and conduct of such other persons just as though he had committed the acts or engaged in such conduct himself.

Notice, however, that before the defendant under consideration may be held criminally responsible for the acts of others, it is necessary that the defendant willfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about. This means that the Government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act or criminal venture, and intended to help him make that venture succeed. The defendant need not perform

19

the underlying criminal act, be present when it is performed, or be aware of the details of its execution, to be guilty of aiding, abetting, commanding, or causing a crime.

Of course, a general suspicion that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed also are not sufficient to establish that the defendant either directed or aided and abetted the crime, unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

Adapted from Pattern Criminal Jury Instructions, Fifth Circuit Judges Association (West 1979), pp. 31-33; First Circuit Pattern Jury Instructions (Criminal Cases), Committee on Pattern Jury Instructions First Circuit (West 1998), § 2.01; United States v. Kegler, 724 F.2d 190, 200-01 (D.C. Cir. 1983).

20

## Findings on Racketeering Acts

It is not necessary for the Government to establish that each defendant committed all of the acts of racketeering activity with which he is charged. Rather, the Government may satisfy its burden by proving beyond a reasonable doubt that the defendant under consideration committed, or aided and abetted the commission of, at least two charged racketeering acts. You must unanimously agree as to which of the two or more acts of racketeering, if any, the defendant under consideration committed, aided, abetted, commanded, or caused, and you must find those acts to constitute a pattern as I have defined that element to you.

The racketeering acts with which the defendants are charged in both Counts 1 and 2 are specifically set forth in paragraph 4 of Count 1 of the Indictment, the RICO conspiracy charge. Those same racketeering acts are also incorporated into, but not specifically set forth, in Count 2, the substantive RICO charge. There are 35 racketeering acts, many of them with subparts. Although all defendants are charged with RICO violations in Counts 1 and 2 of the Indictment, not every defendant is charged with committing each racketeering act. Besides my discussion of the individual racketeering acts and the defendants charged, you will also have the Indictment and the verdict slip during your deliberations to assist you in your deliberations concerning each

21

particular defendant. Shortly, I will instruct you on the
essential elements of the various crimes charged as racketeering
acts, much as I have already instructed you on the essential
elements of a substantive RICO charge.

Before I do that, I want to mention again that many of the
35 charged racketeering acts have subparts. In those cases you
will find that one set of factual circumstances has been charged
to constitute several different criminal acts. Under RICO, it is
neither unusual nor improper to charge that a set of factual
circumstances violates a number of different criminal statutes.
However, because the various subparts of racketeering acts charge
several crimes all arising out of the same set of facts, you must
consider the entire set of subparts for any one racketeering act
to be only one racketeering act for purposes of determining
whether a particular defendant engaged in a pattern of
racketeering activity, as I have defined that essential element
to you. That is, a finding by you that a defendant committed one
or more of the crimes charged in the subparts of a single
racketeering act constitutes a single act of racketeering for
purposes of determining whether a defendant engaged in a pattern
of racketeering activity. In other words, if you find that the
defendant under consideration committed the offenses set forth in
more than one subpart of a single racketeering act, you must find
that he has committed only one, not two or more, racketeering

22

acts. By the same token, if you find that the defendant committed any one of the crimes set forth as subparts in a single racketeering act, you must find that he has committed that one racketeering act.

## RICO Conspiracy -- Offense Generally

Now having dealt to some degree with the substantive RICO offense charged in Court 2 of the Indictment, I now want to turn to Count 1 of the Indictment, which charges the defendants with conspiracy to violate the RICO statute.  Part of the RICO statute, specifically makes it a crime to conspire to violate the RICO statute.

I will later instruct you about the essential elements of the various racketeering acts which are charged in both RICO counts, but I now want to discuss generally the law of conspiracy.

## Conspiracy -- In General

A conspiracy is an agreement or combination of two or more persons to violate the law. It is a kind of partnership in crime in which each member of the conspiracy, just by being a member of the conspiracy, becomes an agent of every other member of the conspiracy. What this means is that each conspirator not only acts for himself, but also acts for the other conspirators. The gist of the offense is a combination or an agreement to disobey or disregard the law to achieve an unlawful purpose.

It is not necessary that the Government prove that the unlawful purpose of the conspiracy actually was achieved in order to prove that the conspiracy existed. What the evidence must show, however, is that the members in some way or manner, through some means, came to a mutual understanding to try and accomplish their common unlawful purpose and that they did so knowingly, willfully, and intentionally.

Pettibone v. United States, 148 U.S. 197, 203 (1893); United States v. Guerro, 693 F.2d 10, 12 (1st Cir. 1982); United States v. Winter, 663 F.2d 1120, 1136 (1st Cir. 1981).

25

## Existence of the Conspiracy

In your consideration of the conspiracy offense alleged in Count 1 of the Indictment, you should first determine, from all of the testimony and evidence in the case, whether or not the conspiracy existed as charged.

To establish the existence of a conspiracy, the evidence need not show that the conspirators entered into any express or formal agreement, or even that they directly, by spoken or written words, stated between themselves just what their object or purpose was, or the details of the scheme, or the means by which they would succeed. The Government need not establish that the co-conspirators knew or agreed upon every detail of the conspiracy. It is sufficient if an agreement is shown by conduct evidencing a silent understanding to share a purpose to violate the law.

Since a conspiracy, by its very nature, is often secret, neither the existence of the common agreement or scheme, nor the fact of any defendant's participation in it need be proved by direct evidence. Both may be inferred from the development and course of dealings between the defendants charged with being co-conspirators.

Pattern Criminal Jury Instruction, Fifth Circuit Judges Association (West 1979), p. 62; United States v. Lopez, 944 F.2d 33, 39 (1st Cir. 1991); United States v. Guerro, 693 F.2d 10, 12 (1st Cir. 1982); United States v. Stubbert, 655 F.2d 453, 456 (1st Cir. 1981); United States v. Thompson, 621 F.2d 1147, 1151 (1st

26

Cir. 1980); <u>United States v. Hathaway</u>, 534 F.2d 386, 400-01 (1st Cir. 1976); <u>United States v. Addonizio</u>, 451 F.2d 49, 74 (3d Cir. 1971).

## Consideration of Acts and Statements of Co-Conspirators

In deciding whether the defendants were members of the charged conspiracy, you should first consider the evidence of each defendant's own acts and statements. In addition, however, you should also consider any other evidence in the case as it bears on the issue of the membership of each defendant in the charged conspiracy. Specifically, you may consider the acts and statements of the other alleged co-conspirators, even if one defendant was not present at the time the acts were done or the statements made by the other defendant, if you find such acts or statements were done by a member of the conspiracy, during the conspiracy's existence and in furtherance of one of the purposes of the conspiracy.

Bourjaily v. United States, 483 U.S. 171 (1987); United States v. Angiulo, 847 F.2d 956, 970-71 (1st Cir. 1988); United States v. Nickerson, 606 F.2d 156, 157-58 (6th Cir. 1979); United States v. Giese, 597 F.2d 1170, 1197 (9th Cir. 1979); United States v. Petrozziello, 548 F.2d 20, 22-23 (1st Cir. 1977); United States v. Winter, 663 F.2d 1120 n.36 (1st Cir. 1981).

28

## Conspiracy -- Relative Roles/Identities of
## Co-Conspirators and Details of Conspiracy

The extent of a particular defendant's participation and role in the conspiracy is not determinative of that defendant's guilt or lack of guilt on the charge of conspiracy in Count 1 of the Indictment, or any other conspiracy charge in the Indictment. Two persons may be found to have conspired even though the evidence of, and the scope of, one's role is much greater than the evidence of, and the scope of, the other's role.

However, as to the particular defendant under your consideration, the Government must prove beyond a reasonable doubt that the defendant knowingly became a member of the conspiracy. This means that in order to meet its burden, the Government must show that the particular defendant agreed to participate, directly or indirectly, in the violation of law. If the Government fails to prove beyond a reasonable doubt that the particular defendant agreed to participate in the violation of the law, then you must acquit that defendant on the conspiracy charge.

United States v. Boylan, 898 F.2d 230, 241-43 (1st Cir. 1990);
United States v. Bryant, 364 F.2d 598, 603 (4th Cir. 1966);
Hernandez v. United States, 300 F.2d 114, 122 (9th Cir. 1962);
United States v. Andolschek, 142 F.2d 503, 507 (2$^{d}$ Cir. 1944) (L. Hand).

29

## Conspiracy - Time Period

The Indictment alleges that the conspiracy charged in Count 1 existed from a time not known exactly, but starting sometime in or before 1991, through in or after January 2002. In determining whether any one defendant conspired as charged, it is sufficient that you find that the conspiracy was in existence for any period of time which included the period alleged in the Indictment, and that the defendant was a member of the conspiracy during at least a portion of the time period charged in the Indictment.

United States v. Hathaway, 534 F.2d 386, 401 n.19 (1st Cir. 1976); United States v. Postma, 242 F.2d 488, 496-97 (2$^{d}$ Cir. 1957)(per curiam).

30

## RICO Conspiracy -- Elements

With those general instructions about conspiracy in mind, and with the instructions about the essential elements of a substantive RICO offense also in mind, I will now inform you of the essential elements of the RICO conspiracy offense charged in Count 1 of the Indictment.

To establish a violation of the RICO conspiracy statute, the Government must prove, for the particular defendant under your consideration, the following two elements, beyond a reasonable doubt:

**First:**  That two or more persons knowingly conspired, combined, or agreed to the commission by members of the conspiracy of a substantive violation of the RICO statute;

**Second:**  That the defendant knowingly joined in this agreement.

The general principles of conspiracy law, concerning the formation, existence, and timing of the conspiracy, as well as the participation of conspirators, which I mentioned earlier, are all applicable to this count of the Indictment.  As I also said earlier, something is done knowingly if it is done voluntarily and intentionally, and not because of ignorance, mistake, accident, carelessness, or other innocent reason.

18 U.S.C. § 1962(d); Adapted from Devitt, Blackmar and O'Malley, Federal Jury Practice and Instructions, Criminal Vol. 2, § 28.03 (4th ed. 1990); Sand, Modern Federal Jury Instructions, No. 6-17 (1993); United States v. Cambara, 902 F.2d 144, 146 (1st Cir. 1990).

31

## First RICO Conspiracy Element -- Agreement

The Government must establish that a particular defendant agreed with at least one other person to the commission of a substantive violation of the RICO statute by one or more members of the conspiracy. A substantive RICO violation requires proof that a particular defendant committed, aided, abetted, commanded, or caused the commission of at least two racketeering acts that constitute a pattern of racketeering activity as I have defined that term for you. However, the Government's proof of a RICO conspiracy violation does not require the Government to prove that the particular defendant under your consideration himself agreed personally to commit, aid, abet, command, or cause the commission of at least two racketeering acts. You may find that a defendant has entered into the requisite agreement to violate RICO when the Government has proven beyond a reasonable doubt that the defendant agreed with at least one other co-conspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise. The Government is not required to prove that the defendant personally committed two or more racketeering acts, or that he agreed to personally commit two or more racketeering acts. Rather, the Government must prove beyond a reasonable doubt that the defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the

32

RICO conspiracy (which could be but does not need to be the defendant himself) would commit at least two predicate racketeering acts in the conduct of affairs of the enterprise.

Moreover, the Indictment need not specify the predicate racketeering acts that the defendant agreed would be committed by some member of the conspiracy in the conduct of the affairs of the enterprise. Rather, where it is alleged, as in Count 1 of this Indictment, that it was agreed that multiple acts indictable under the applicable laws would be committed, you are not limited with respect to a particular defendant to considering only the specific racketeering acts alleged in the Indictment to have been committed by that particular defendant. Rather, you may also consider and find, if supported by the evidence, that a particular defendant agreed that racketeering acts charged as being committed by other defendants should be committed by those others in furtherance of the enterprise's affairs.[1]

As was the case with a substantive RICO offense, in order to convict a particular defendant of the RICO conspiracy offense, your verdict must be unanimous as to which racketeering acts the particular defendant agreed would be committed in the conduct of the affairs of the enterprise.

---

[1] See, e.g., United States v. Glecier, 923 F.2d 496, 499-500 (7th Cir. 1991); United States v. Crockett, 979 F.2d 1204, 1208-09 (7th Cir. 1992); United States v. Phillips, 874 F.2d 123, 125-28 (3d Cir. 1989).

33

Seventh Circuit Pattern Jury Instructions (1999 Ed.); Eleventh
Circuit Pattern Jury Instructions, § 71.2 (2003 Ed.); <u>Salinas v.
United States</u>, 522 U.S. 52, 62-65 (1997); <u>United States v.
Abbell</u>, 271 F.3d 1286, 1299 (11th Cir. 2001), <u>cert. denied</u>, 537
U.S. 813 (2002); <u>United States v. Nguyen</u>, 255 F.3d 1335, 1341
(11th Cir. 2001), <u>cert. denied</u>, 123 S.Ct. 1949 (2003); <u>United
States v. Zichettello</u>, 208 F.3d 72, 100 (2<sup>d</sup> Cir. 2000); <u>United
States v. Posada-Rios</u>, 158 F.3d 832, 857 (5th Cir. 1998); <u>United
States v. To</u>, 144 F.3d 737, 744 (11th Cir. 1998); <u>United States
v. Starrett</u>, 55 F.3d 1525, 1543-44 (11th Cir. 1995); <u>United
States v. Quintanilla</u>, 2 F.3d 1469, 1484 (7th Cir. 1993); <u>United
States v. Eufrasio</u>, 935 F.2d 553, 577 (3<sup>d</sup> Cir. 1991); <u>United
States v. Rastelli</u>, 870 F.2d 822, 825 (2<sup>d</sup> Cir. 1989); <u>United
States v. Neapolitan</u>, 791 F.2d 489, 498 (7th Cir. 1986); <u>United
States v. Elliott</u>, 571 F.2d 880, 903-04 (5th Cir.  1978).

## Overview of Racketeering Acts and Pattern Element

Before you can fully consider the RICO charges in the Indictment, it is necessary for me to instruct you on the essential elements of the various racketeering acts charged in the RICO counts. As you will recall, one of the essential elements of a substantive RICO charge is that the defendant under consideration must have engaged in a pattern of racketeering activity. As I stated earlier, a pattern of racketeering activity is comprised of two or more racketeering acts within ten years of each other that satisfy the concepts of relatedness and continuity that I also addressed. For you to be able to determine if a particular defendant committed, aided, abetted, commanded, or caused, or agreed to the commission of two or more such racketeering acts, it is now necessary that I instruct you on the essential elements of each of the charged racketeering acts.

In this case, many of the following instructions have a dual purpose. That is, many of the racketeering acts are also charged later in the Indictment as substantive crimes. In those cases, which I will specifically highlight for you, the instructions on the essential elements of those crimes will govern your determination of whether the Government has met its burden to establish beyond a reasonable doubt the commission of both the charged racketeering act and its related substantive offense.

35

The burden on the Government is the same, whether you are considering a racketeering act or a count of the Indictment.   The Government must prove each essential element beyond a reasonable doubt.

One thing you will notice as I go through the various racketeering acts is that some racketeering acts charge state crimes, while other racketeering acts charge federal crimes. State crimes cannot be charged in federal court as substantive offenses, but Congress has authorized the use of certain specified state crimes as predicate racketeering activity in support of RICO offenses.   For this reason you will see that most of the federal crimes charged as racketeering acts are charged again as substantive crimes, while none of the state crimes charged as racketeering acts are charged a second time as substantive crimes.

## The Travel Act:  The Indictment and the Statute

Count Twelve charges the defendant with a substantive

violation of Title 18, United States Code, Section 1952, which is

known as the Travel Act, that is, with actually violating, rather

than conspiring to violate, the Travel Act by traveling or

causing another to travel in interstate commerce from Rhode

Island to the Commonwealth of Massachusetts on or about October

28, 2000.

The Travel Act makes it a federal crime for anyone to travel

in interstate commerce for the purpose of carrying on certain

unlawful activities.  The law says, in pertinent part:

> Whoever travels in interstate or foreign commerce * * *,
> with intent to--   * * *
>
> (2) commit any crime of violence to further any unlawful
> activity; or
>
> (3) otherwise promote, manage, establish, carry on, or
> facilitate the promotion, management, or carrying on of any
> unlawful activity,
>
> and thereafter performs or attempts to perform

[a crime of violence or an act to promote, manage, establish,
carry on, or facilitate the promotion, management, or carrying on
of any unlawful activity is guilty of a crime].

18 U.S.C. § 1952; Sand, Modern Federal Jury Instruction, ¶ 60.01
at 60-1 (1986).

37

## 18 U.S.C. § 1952 - Elements of the Offense

To sustain its burden of proof for the crime of traveling or causing travel in interstate commerce to promote an unlawful activity, which is charged as a substantive crime in Count Twelve, the Government must prove the following four essential elements beyond a reasonable doubt:

**First**:  the defendant traveled or aided and abetted or caused another to travel from one state to another;

**Second**:  the defendant did such travel or caused such travel with the intention to promote, manage, establish, or carry on the unlawful activity described in Count Twelve of the Indictment, that is, a business enterprise involving gambling and extortion, or to commit crimes of violence to further such unlawful activity;

**Third**:  the business enterprise involving gambling and extortion that is described in Count Twelve of the Indictment was illegal under the laws of a State or of the United States; and

**Fourth**:  after the interstate travel, the defendant knowingly and deliberately committed a crime of violence or attempted to commit a crime of violence in order to further the unlawful activity described in the Indictment, or did an act, or attempted to do an act, in order to promote, manage, establish, or carry on the unlawful activity described in the Indictment.

Adapted from 2 Devitt, Blackmar & O'Malley, Federal Jury Practice and Instructions, § 46.03.

## "Travels in Interstate Commerce" - Defined

The first element that the Government must prove beyond a reasonable doubt is that the defendants traveled or aided and abetted another to travel, or caused another to travel in interstate commerce. The phrase "travels in interstate * * * commerce" means simply travel or transportation from one state to another. The defendant has been charged in Count Twelve with traveling or causing others to travel in interstate commerce from the State of Rhode Island to the Commonwealth of Massachusetts.

It is not necessary for the Government to prove that any travel from one state to another was contemplated or planned at the time that the course of activity began, or that the defendant knew that he was actually traveling or causing another to travel in interstate commerce, or that the defendant agreed that another would travel interstate, or that the defendant himself traveled interstate. It also is not necessary for the Government to prove that the promotion of the activity alleged to be unlawful was the only reason for the interstate travel, or that the travel was essential to that activity or fundamental to the unlawful scheme, or that the unlawful activity could not have been accomplished without the interstate travel.

Rather, the Government must prove beyond a reasonable doubt that the defendant traveled in interstate commerce, or caused another to travel in interstate commerce, with the necessary

39

unlawful intent, which is that one of the reasons for the

interstate travel was to promote, manage, carry on or facilitate

the unlawful activity described in the Indictment or to commit a

crime of violence.


Adapted from 2 Devitt, Blackmar & O'Malley, Federal Jury Practice
and Instructions, §46.04; Sand, Modern Federal Jury Instruction,
¶60.01 at 60-3 to 60-6 (1986).

## "Promote" or "Facilitate the Promotion"
### of "Unlawful Activity" - Defined

The phrase to "promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of any unlawful activity" means to do any act that would cause the "unlawful activity" described in the Indictment to be accomplished or to assist the "unlawful activity" in any way.

18 U.S.C. § 1952 defines "unlawful activity" to include any business enterprise involving gambling and extortion in violation of the laws of the State in which committed or of the United States. Count Twelve charges the defendant with actually traveling or causing another to travel in interstate commerce on or about October 28, 2000, to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, to wit, (1) a business enterprise involving gambling in violation of Massachusetts General Laws, Chapter 271, Sections 16A, 17, 17A, and 22, and Title 18, United States Code, Section 1955 and (2) extortion in violation of Title 18, United States Code, Sections 892, 893, 894, and 1951, and Massachusetts General Laws, Chapter 265, Section 25 or to commit crimes of violence to further that business enterprise involving illegal gambling.

2 Devitt, Blackmar & O'Malley, Federal Jury Practice and Instructions, § 46.05.

## 18 U.S.C. § 1952 - State Statutes Involved

As I have previously explained, the unlawful activity that
the travel in Count Twelve was intended to promote or facilitate
or that the crimes of violence were intended to further was a
business enterprise involving gambling in violation of
Massachusetts law.   The third element the Government must prove
to you beyond a reasonable doubt is that the gambling was, in
fact, unlawful under Massachusetts General Laws Ch. 271, §§ 16A,
17, 17A, and 22 and that the extortion was, in fact, unlawful
under Massachusetts General Laws Ch. 265, § 25.

In order to prove this, the Government must prove, beyond a
reasonable doubt, each of the following elements of gambling
under Massachusetts law.

Section 16A provides, in pertinent part, as follows:

Whoever knowingly organizes, supervises, manages or
finances at least four persons so that such persons may
provide facilities or services or assist in the
provision of facilities or services for the conduct of
illegal lotteries, or for the illegal registration of
bets or the illegal buying or selling of pools...upon
the happening of any event, or upon the result of a
game..., or whoever knowingly receives from at least
four such persons compensation or payment in any form
as a return from such lotteries, such registration or
such buying or selling... [commits a crime].

As used in this section, the word "persons" does not include
bettors or wagerers who merely use such facilities or services
for the purpose of making a bet or wager and do not otherwise
provide or assist in the provision of such facilities or

42

services.   This section does not apply to such bettors or
wagerers.   But, as I stated before, one who participates in the
operation of the illegal gambling business does not lose his
status because he also placed a bet at some point.

Section 17 provides, in pertinent part, as follows:

Whoever keeps a building or room, or any part thereof, or
occupies, or is found in, any place ...with apparatus, books
or any device, for registering bets, or buying or selling
pools, ... upon the result of a game...or whoever is present
in such place, ...engaged in such business or employment; or
being such keeper, occupant, person found or person present,
as aforesaid, registers such bets, or buys or sells such
pools, ...or, being the owner, lessee or occupant of a
building or room, ...knowingly permits the same to used or
occupied for any such purpose, or therein keeps, ...or
knowingly permits to be therein kept, exhibited, used or
employed, any device or apparatus for registering such bets,
or for buying or selling such pools, or whoever becomes the
custodian or depository for...compensation in any manner, of
any pools, money, property or thing of value, in any manner
staked or bet upon such result...[commits a crime].

Section 17A provides, in pertinent part, as follows:

Whoever uses a telephone or, being the occupant in control
of premises where a telephone is located or a subscriber for
a telephone, knowingly permits another to use a telephone so
located or for which he subscribes, as the case may be, for
the purpose of accepting wagers or bets, or buying or
selling of pools, or for placing all or any portion of a
wager with another, upon the result of a trial or contest of
skill, speed, or endurance of man, beast, bird, or machine,
or upon the result of an athletic game or contest, or upon
the lottery called the numbers game, or for the purpose of
reporting the same to a headquarters or booking office, or
who under a name other than his own or otherwise falsely or
fictitiously procures telephone service for himself or
another for such purposes, shall be punished by a fine of
not more than two thousand dollars or by imprisonment for
not more than one year; provided, however, that this section
shall not apply to use of telephones or other devices or
means to place wagers authorized pursuant to the provisions
of section 5C of chapter 128A.

43

In order to prove the defendant guilty of this offense, the government must prove two things beyond a reasonable doubt:

First: that the defendant (used) (was the subscriber for) (was in control of premises containing) a telephone; and

Second: that the defendant knowingly (used the telephone) (permitted the telephone to be used) for (accepting wagers or bets) (buying or selling pools placing bets upon a contest of skill, speed or endurance, or an athletic game) (placing bets in a numbers game) (reporting the results of a contest of skill, speed or endurance, or an athletic game, to a headquarters or booking office) (reporting the results of a numbers game to a headquarters or booking office).

Section 22 provides:

Whoever receives a letter, package or parcel for delivery to or transportation from a person, or delivers or transports the same to or from a person, having reasonable cause to believe that such person is engaged or in any way concerned in the management or promotion of or agency for a lottery, or the game known as policy lottery or policy, or the buying or selling of pools or registering of bets, or other form of gaming, and that such letter, package or parcel has relation to such business, shall be punished by a fine of not less than fifty nor more than five hundred dollars; but this section shall not apply to the receipt, carriage or delivery of United States mail matter by an officer or employee thereof

Chapter 265, Section 25, of the Massachusetts General Laws, states in pertinent part:

Whoever, verbally or by a written or printed communication, maliciously threatens to accuse another of a crime or offence, or by a verbal or written or printed communication maliciously threatens an injury

44

to the person or property of another ... with intent
thereby to extort money or any pecuniary advantage, or
with intent to compel any person to do any act against
his will, shall be punished

Adapted from 32 J.R. Nolan and Bruce R. Henry, <u>Massachusetts</u>
<u>Practice, Criminal Law</u>, §§ 499, 500, 501 at 391-96 (1988).  See
<u>Commonwealth v. Vitello</u>, 327 N.E.2d 819, 829-830 (1975).
<u>Commonwealth v. Massod</u>, 217 N.E.2d 191 (1966).  <u>Commonwealth v.</u>
<u>Murphy</u>, 342 Mass. 393, 398 (1961)(statute requires scienter);
<u>Commonwealth v. Jensky</u>, 318 Mass. 350, 352-54 (1945)(police
answering the suspect telephone anonymously may testify as to
what callers said). <u>Commonwealth v. Massod</u>, 217 N.E.2d 191
(1966); <u>Commonwealth v. Club Caravan, Inc.</u>, 30 Mass. App. Ct.
561, 571 N.E. 2d 405, 406 (1991); <u>Commonwealth v. Steven Marder</u>,
No. 062413-420, slip op. (Suffolk Superior Court, June 16, 1989),
at 14, 27-32, <u>aff'd in part, rvsd. in part</u>, <u>Club Caravan</u>, 30
Mass. App. Ct. at 571; <u>Commonwealth v. Macomber</u>, 333 Mass. 298
(1955); <u>see</u> Sand, <u>Modern Federal Jury Instruction</u>, ¶60.01 at 60-
10 (1986).

## "Business Enterprise Involving Gambling" - Defined

The term "business enterprise involving gambling...and extortion" means a course of conduct as opposed to an isolated event or sporadic activity. It is not necessary for the Government to prove that the "business enterprise" alleged in Count Twelve of the Indictment was performed over a specific period of time by a specified number of people or was the primary activity of the defendants or even resulted in a profit to the defendants. The Government must prove beyond a reasonable doubt, however, that the "business enterprise" making up the "unlawful activity" alleged in the Indictment was a regular or continuous course of conduct and not just a singular occurrence or an isolated event.

2 Devitt, Blackmar & O'Malley, Federal Jury Practice and Instructions, § 46.06.

46

## Fourth Element: Subsequent Act in Furtherance
of the Unlawful Activity

The fourth element that the Government must prove, again
beyond a reasonable doubt, is that the interstate travel
undertaken or caused by the defendant was followed by his
performance or attempted performance of an act in furtherance of
the unlawful activity, or by his commission or attempted
commission of a crime of violence to further the unlawful
activity.  This act need not itself be unlawful.  However, the
act or the crime of violence must come after the interstate
travel.  Any act or crime of violence that happened before the
interstate travel cannot satisfy this element.

Sand, Modern Federal Jury Instruction, ¶ 60.01 at 60-12 (1986).

47

## The Nature Of The Offense Charged

Counts Twenty-Nine and Thirty-One of the Indictment charge that the defendant made extortionate extensions of credit to Ronald Zampanti, meaning that both the defendant, as the creditor, and Ronald Zampanti, as the debtor, understood that any delay in the repayment of the extension of credit or loan by the debtor could result in violence to him.

2 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 37.01 (2000)

## The Statute Defining The Offense Charged

Section 892(a) of Title 18 of the United States Code
provides, in pertinent part, that: "Whoever makes any
extortionate extension of credit ... " shall be guilty of an
offense against the United States.


2 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions,
§ 37.02 (2000)

## The Essential Elements Of The Offense Charged

In order to sustain its burden of proof for the crime of making an extortionate extension of credit as charged in Counts Twenty-Nine and Thirty-One of the indictment, the Government must prove the following two essential elements beyond a reasonable doubt:

**First:** The defendant knowingly made an extension of credit to Ronald Zampanti; and

**Second:** It was the understanding of the defendant, as the creditor, and Ronald Zampanti, as the debtor, at the time the extension of credit was made, that delay in making repayment or that failure to make repayment could result in the use of violence.

2 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 37.03 (2000)

50

## "An Extortionate Extension of Credit" Defined

An "extortionate extension of credit" is any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person.

In deciding whether the defendant made an extortionate extension of credit, you may consider whether the evidence in the case proved any or all of the following factors: (1) the debt incurred by the debtor was legally unenforceable, and (2) the annual interest rate on the debt was more than 45%, and (3) the debtor believed, at the time credit was extended, that the defendant had previously used extortionate means to collect a debt or had a reputation for doing so, and (4) the credit extended to the debtor exceeded $100.00.

If the government proves all four of these factors beyond a reasonable doubt, then it has provided "prima facie" evidence that an extortionate extension of credit was made.

"Prima facie evidence" means sufficient evidence, unless and until outweighed by other evidence in the case, which leads the jury to a different or contrary conclusion.

2 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 37.04 (2000)

51

## "Understanding" Defined

The term "understanding" as used in this statute means "comprehension" rather than "agreement."

This "understanding" or comprehension does not need to be based upon explicit threats by the defendant.   This "understanding" or comprehension may be inferred from the defendant's reputation for collection or inferred from specific acts of the defendant in the collection or extensions of credit which are known to the debtor.

2 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 37.05 (2000)

52

## 18 U.S.C. § 894:   The Statute Defining the Offense Charged

The statute that is charged in the Indictment, Section

894(a)(1) of Title 18 of the United States Code, states, in part,

that:

> Whoever knowingly participates in any way, or conspires to
> do so, in the use of any extortionate means (1) to collect
> or attempt to collect any extension of credit* * * [shall be
> guilty of an offense against the United States].

## 18 U.S.C. § 894 - Elements of the Offense

In order to sustain its burden of proof on this crime, the

Government must prove the following three essential elements

beyond a reasonable doubt:

**First:**  That the defendant collected or attempted to
collect an extension of credit from Ronald Zampanti;

**Second:**  That the defendant used extortionate means or
participated in the use of extortionate means to
collect or attempt to collect the extension of credit;
and

**Third:**  That the defendant participated knowingly in
the use of those extortionate means.

Adapted from 2 Sand, Siffert, Loughlin & Reiss, Modern Federal
Jury Instructions, Instruction 32-6 (2000).

## "Collection of an Extension of Credit" - Defined

The first element of the substantive offense charged in Counts Thirty and Thirty-Two is that the defendant collected or attempted to collect an extension of credit.

"To collect" means to induce a person in any way to make a payment of money. To "extend credit" means to make or renew any loan, or to enter into any agreement, whether tacit or express, whereby the repayment of a debt or the satisfaction of a claim may or will be deferred. It makes no difference whether the debt or claim in question is valid or invalid, acknowledged or not acknowledged, or how it may have arisen. An extension of credit need not be a loan, but may be based on any debt or claim for money, if payment of that debt or claim has been or will be deferred.

Adapted from 2 Sand, Siffert, Loughlin & Reiss, Modern Federal Jury Instructions, Instruction 32-7(2000); 18 U.S.C. § 891(1) and (4).

## "Extortionate Means" - Defined

The second element of the offense which the Government must prove beyond a reasonable doubt is that the defendant used or participated in the use of extortionate means to collect or to attempt to collect an extension of credit. The statute defines "extortionate means" as "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person." A threat includes the use of words that convey to the other person that failure to comply with the speaker's demands will result in physical or economic harm to the person.

The defendant's actions need not generate actual fear in the debtor. You need only find that the defendant intended to take actions which reasonably would induce fear in an ordinary person. Thus, it is the defendant's conduct, and not the victim's state of mind, that is relevant.

Adapted from 2 Sand, Siffert, Loughlin & Reiss, Modern Federal Jury Instructions, Instruction 32-8 (2000); 2 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, §§ 37.16, 37.17 (2000); 18 U.S.C. § 891(7).