UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | NO. 03-CR-10356-MLW |
| | ) | |
| FRANCIS WHITE, (3) | ) | |
| A/K/A THE WHITE-HAIRED GUY | ) | |

## GOVERNMENT'S SUBMISSION REGARDING DEFENDANT'S CHANGE OF PLEA

The United States of America, by its undersigned attorneys, respectfully submits this memorandum regarding defendant FRANCIS WHITE'S ("WHITE") change of plea to the Indictment in the above-captioned case.  White has agreed to plead guilty to Racketeering Acts 10, 23A and B, 24A and B, 25A and B of Counts One and Two, and substantive Counts Twelve and Twenty-Nine through Thirty-Two of the Indictment.  The elements and penalties for the pertinent offenses and crimes are as follows:

### A.    RICO - Counts One and Two

Title 18, United States Code, Section 1962, provides for a maximum sentence of twenty years, a $250,000 fine, $100 special assessment, and three years' supervised release.

Counts One and Two allege that at all times material to the allegations contained in this Indictment, in the District of Massachusetts and elsewhere, the defendant and others were members and associates of a criminal organization, commonly known as the New England Family of La Cosa Nostra, an Enterprise as

defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The Enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Enterprise including its leadership, membership, and associates engaged in various criminal activities, consisting of acts indictable under Title 18, United States Code, Sections 892 and 894 (relating to making extortionate extensions of credit and collecting extensions of credit by extortionate means); Section 1951 (relating to interference with commerce by extortion); Section 1952 (relating to interstate travel in aid of racketeering). The defendant committed, aided and abetted, and conspired with others in the commission of Racketeering Acts 10, 23A and 23B, 24A and B and 25A and B. The racketeering activity includes:

Travel and causing travel to occur in interstate commerce between the Commonwealth of Massachusetts and the State of Rhode Island with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, to wit, (1) a business Enterprise involving gambling in violation of Massachusetts General Laws, Chapter 271, Sections 16A, 17, 17A, and 22, and Title 18, United States Code, Section 1955, and (2) extortion in violation of Title 18, United States Code, Sections 892, 893, 894, and 1951, and Massachusetts General Laws, Chapter 265,

Section 25 and thereafter did perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952 and 2. [Racketeering Act 10 of Counts One and Two and Count 12]

Making and collecting extortionate extensions of credit involving Ronald Zampanti, in violation of Title 18, United States Code, Section 892. [Racketeering Acts 23A, 24A, and 25A of Counts One and Two and Counts Twenty-Nine and Thirty-One]

Participating in a loanshark business, that is, extortionate means to collect and attempt to collect extensions of credit, in violation of Title 18, United States Code, Section 894. [Racketeering Acts 23B, 24B, and 25B of Counts One and Two and Counts Thirty and Thirty-Two]

Title 18, United States Code, Subsections 1962 (c) and (d), provide as follows:

> (c)  It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate directly of indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d)   It shall be unlawful for any person to conspire to violate any of the provisions of subsection...(c) of this section.

Section 1961 defines the terms "enterprise," "unlawful

debt," and "pattern of racketeering activity" used in Section 1962 as follows:

>       (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;
>
>       (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

Section 1961 (1) also defines "racketeering activity;" in relevant part, "racketeering activity" means:

>       (B)   [A]ny act which is indictable under any of the following provisions of Title 18, United States Code, sections 891-894 (relating to extortionate credit transactions, ...section 1951 (relating to interference with commerce...extortion), section 1952 (relating to racketeering), ...section 1956 (relating to the laundering of monetary instruments).

In order to convict the defendant of violating Section 1962(c), the government must prove:

> *first:*     the existence of an "enterprise";
>
> *second:*    that the defendant was employed by or associated with the enterprise;
>
> *third:*     that the defendant engaged in a pattern of racketeering activity, i.e., that the defendant agreed to commit, or in fact committed, two or more specified predicate crimes; and
>
> *fourth:*    that through this pattern of racketeering activity the defendant knowingly and willfully participated, directly or indirectly, in the conduct of the affairs of the enterprise.

United States v. Shifman, 124 F.3d 31, 34 (1st Cir. 1997); United

States v. Boylan, 898 F.2d 230, 241 (1st Cir. 1990); United

States v. Angiulo, 847 F.2d 956 (1st Cir. 1988); see United

States v. Ruiz, 905 F.2d 499, 504 (1st Cir. 1990).  Finally, the

evidence must show that the enterprise engaged in activities

which affected interstate commerce.

As used in 18 U.S.C. § 1962, the term "enterprise" includes

any "group of individuals associated in fact although not a legal

entity."  18 U.S.C. § 1961(4).  The Supreme Court held in United

States v. Turkette, 452 U.S. 576 (1981), that a wholly illegal

organization may be an enterprise for RICO purposes.

**B.    Interstate Travel in Aid of Racketeering - Count
        Twelve, Racketeering Act 10 of Counts One and Two**

Title 18, United States Code, Section 1952, provides for a

five-year maximum term of incarceration, a fine of $250,000, and

payment of the $100 Mandatory Special Assessment.

Title 18, United States Code, Section 1952 states in

pertinent part:

    (a)   Whoever travels in interstate or foreign commerce or
        uses the mail or any facility in interstate or foreign
        commerce, with intent to:

        (1)   distribute the proceeds of any unlawful
            activity; or

                * * *

        (3)   otherwise promote, manage, establish,
            carry on, or facilitate the promotion,
            management, establishment, or carrying
            on, of any unlawful activity

    and thereafter performs or attempts to perform any of
    the acts specified in subparagraph (1), (2) and (3),
    shall be punished.

(b)   As used in this section: (i) "unlawful activity"
means (1) any business enterprise involving
gambling...in violation of the laws of the State
in which they are committed or of the United
States, (2) extortion...in violation of the laws
of the State in which committed or of the United
States....

The essential elements of a Section 1952 violation are:

first:     the defendant traveled or caused another to travel
           interstate;

second:    that this travel was done with the intent to
           promote, manage, establish, or carry on an
           unlawful activity;

third:     after the interstate travel, the defendant
           performed or attempted to perform acts in
           furtherance of this same unlawful activity.

United States v. Arruda, 715 F.2d 671 (1st Cir. 1983).

   C.   **Making, Financing, and Collecting Extortionate
        Extensions of Credit - Counts Twenty-Nine through
        Thirty-Two, Racketeering Acts 23A and B, 24 A and B,
        25A and B of Counts One and Two**

Title 18, United State Code Sections 892 and 894, provide

for maximum sentence of twenty years of incarceration, a $250,000

fine, $100 special assessment and three years supervised

released.

18 U.S.C. § 892 provides:

(a) Whoever makes any extortionate extension of credit, or
conspires to do so, shall be fined under this title or
imprisoned not more than 20 years, or both.

(b) In any prosecution under this section, if it is shown
that all of the following factors were present in connection
with the extension of credit in question, there is prima
facie evidence that the extension of credit was
extortionate, but this subsection is nonexclusive and in no
way limits the effect or applicability of subsection (a):

(1) The repayment of the extension of credit, or the performance of any promise given in consideration thereof, would be unenforceable, through civil judicial processes against the debtor...at the time the extension of credit was made.

(2) The extension of credit was made at a rate of interest in excess of an annual rate of 45 per centum calculated according to the actuarial method of allocating payments made on a debt between principal and interest, pursuant to which a payment is applied first to the accumulated interest and the balance is applied to the unpaid principal.

(3) At the time the extension of credit was made, the debtor reasonably believed that either

>   (A) one or more extensions of credit by the creditor had been collected or attempted to be collected by extortionate means, or the nonrepayment thereof had been punished by extortionate means; or

>   (B) the creditor had a reputation for the use of extortionate means to collect extensions of credit or to punish the nonrepayment thereof.

(4) Upon the making of the extension of credit, the total of the extensions of credit by the creditor to the debtor then outstanding, including any unpaid interest or similar charges, exceeded $100.

(c) In any prosecution under this section, if evidence has been introduced tending to show the existence of any of the circumstances described in subsection (b)(1) or (b)(2), and direct evidence of the actual belief of the debtor as to the creditor's collection practices is not available, then for the purpose of showing the understanding of the debtor and the creditor at the time the extension of credit was made, the court may in its discretion allow evidence to be introduced tending to show the reputation as to collection practices of

the creditor in any community of which the debtor was a
member at the time of the extension.

In order to sustain its burden of proof for the crime of
making an extortionate extension of credit, the government must
prove:

first:     that the defendant knowingly made an extension of
           credit to the debtor; and

second:    it was the understanding of the defendant, as the
           creditor, and the debtor at the time the extension
           of credit was made, that delay in making repayment
           or that failure to make repayment could result in
           the use of illegal means or violence.

United States v. Martorano, 557 F.2d 1, 7 (1st Cir. 1977).

Section 894 provides:

(a) Whoever knowingly participates in any way, or conspires
to do so, in the use of any extortionate means

        (1) to collect or attempt to collect any
        extension of credit, or

        (2) to punish any person for the nonrepayment
        thereof,

shall be fined under this title or imprisoned not more than
20 years, or both.

(b) In any prosecution under this section, for the
purpose of showing an implicit threat as a means of
collection, evidence may be introduced tending to show
that one or more extensions of credit by the creditor
were, to the knowledge of the person against whom the
implicit threat was alleged to have been made,
collected or attempted to be collected by extortionate
means or that the nonrepayment thereof was punished by
extortionate means.

An extortionate means "is any means which involves the use, or an

express or implicit threat of use, of violence or other criminal

8

means to cause harm to the person, or property of any person."
See 18 U.S.C. § 891(7).

In order to sustain its burden of proof for the crime of
using extortionate means to collect an extension of credit, the
government must prove the following:

first:      that there was a debt owing;

second:     that the defendant used extortionate means to
            collect or attempt to collect, or punish
            nonrepayment; and

third:      that the defendant acted knowingly.

See United States v. Natale, 526 F.2d 1160 (2d Cir. 1975); United
States v. Benedetto, 558 F.2d 171, 178 (3d Cir. 1977).

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By

ERNEST S. DINISCO
Assistant U.S. Attorney


CERTIFICATE OF SERVICE

I, Ernest S. DiNisco, hereby certify that I have this 2nd
day of December, 2004, served a copy of the within Government's
Submission Regarding Defendant's Change of Plea on counsel of
record.

ERNEST S. DINISCO
Assistant U.S. Attorney



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

November 10, 2004

Richard M. Egbert, Esq.
99 Summer Street
Boston, MA 02110

Re: <u>United States v. Francis White</u>
    Criminal No. 03-10356-MLW

Dear Mr. Egbert:

     This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Francis White ("Defendant"), in the above-referenced case.  The Agreement is as follows:

     1.    <u>Change of Plea</u>

     At the earliest practicable date, Defendant shall plead guilty to so much of Counts One and Two as charges a pattern of racketeering activity, consisting of Racketeering Acts 10, 23A and B, 24A and B, 25A and B, and substantive Counts Twelve and Twenty-Nine through Thirty-Two.  Defendant expressly and unequivocally admits that he in fact knowingly, intentionally and willfully committed the crimes therein charged, and is in fact guilty of those offenses.  The U.S. Attorney agrees to dismiss so much of Counts One and Two as charge a pattern of racketeering activity, consisting of Racketeering Acts 21, 22, and 26 through 35, and substantive Counts Ten, Twenty-Seven, Twenty-Eight, and Thirty-Three through Thirty-Eight following the imposition of sentence.

     2.    <u>Penalties</u>

     As to Counts One and Two, pursuant to Title 18, United States Code, Sections 1963, Defendant faces a twenty-year maximum term of incarceration, a fine in accordance with Title 18, and

payment of the $100 mandatory special assessment on each Count. As to Count Twelve, pursuant to Title 18, United States Code, Section 1952, Defendant faces a five-year maximum term of incarceration and/or a fine in accordance with Title 18, and payment of the $100 Mandatory Special Assessment. As to Counts Twenty-Nine through Thirty-Two, pursuant to Title 18, United States Code, Sections 892 and 894, Defendant faces a maximum twenty-year term of incarceration and/or a fine in accordance with Title 18, and payment of the $100 Mandatory Special Assessment on each Count.

3.    Sentencing Guidelines

The parties will take the following positions at sentencing under the United States Sentencing Guidelines.

The parties have agreed that issues at sentencing shall be resolved at a sentencing hearing conducted by the Court pursuant to the United States Sentencing Guidelines in effect as of the date of this plea agreement.

(a)    **Base Offense Level**

With respect to Counts One, Two and Twelve, the parties agree to take the position that U.S.S.G. §§ 2E1.1(a)(2) and 2E2.1(a) apply, and that Defendant's Base Offense Level is therefore 20. With respect to Counts Twenty-Nine through Thirty-Two, the parties agree to take the position that U.S.S.G. 2E2.1 applies, and therefore that his Base Offense Level is 20.

(b) **Relevant Conduct**

The parties recognize that Racketeering Acts 21, 22, and 26 through 35, and substantive Counts Ten, Twenty-Seven, Twenty-Eight, and Thirty-Three through Thirty-Eight, which the U.S. Attorney has agreed to dismiss following imposition of sentence in this case, might be deemed relevant conduct pursuant to U.S.S.G. § 1B1.3 if proven by a preponderance of the evidence at a sentencing hearing. Defendant will take the position that these racketeering acts cannot be proven by a preponderance of the evidence and therefore should not be considered relevant conduct at sentencing. In consideration of the benefits received by the government in this agreement, the government will not seek an evidentiary hearing or otherwise offer evidence to prosecute these or other uncharged racketeering acts at sentencing. The government reserves the right to respond to requests for information from the District Court and the United States Probation Office in this case.

2

### (c)    Grouping Of Closely Related Counts

The parties agree to take the position that pursuant to U.S.S.G. § 3D1.2, Defendant's Base Offense Level is increased by one level.

### (d)    Criminal History Category

The U.S. Attorney takes no position at this time with respect to Defendant's Criminal History Category.

### (e)    Acceptance of Responsibility

Based on Defendant's prompt acceptance of personal responsibility for the offenses of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1.

The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. § 3E1.1 if, at any time between his execution of this Agreement and sentencing Defendant:

(a)    Fails to admit a complete factual basis for the plea;

(b)    Fails to truthfully admit his conduct in the offenses of conviction;

(c)    Fails to provide truthful information about his financial status;

(d)    Engages in acts which form a basis for finding that Defendant has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

(e)    Intentionally fails to appear in Court or violates any condition of release;

(f)    Commits a crime; and

(g)    Attempts to withdraw his guilty plea.

Defendant expressly understands that he may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that he receive a reduction in Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the Government may seek an upward adjustment pursuant to U.S.S.G. § 3C1.1 if Defendant obstructs justice after the date of this Agreement.

4.    Sentence Recommendation

The United States Attorney agrees to recommend a sentence at the low end of the applicable guideline range.

The U.S. Attorney and Defendant agree that there is no basis for a departure from the sentencing range established by the United States Sentencing Guidelines. Accordingly, neither the U.S. Attorney nor Defendant will seek a departure on any ground from the Sentencing Guidelines.

In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves his right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

5.    Payment of Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

6.    Waiver of Rights to Appeal and to Bring Collateral Challenge

Defendant is aware that he has the right to challenge his sentence and guilty plea on direct appeal. Defendant is also aware that he may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255).

In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge:

> (1)    Defendant's guilty plea and any other aspect of Defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and

4

(2)    The adoption by the District Court at sentencing
of any of the positions found in paragraph 3 which
will be advocated by the U.S. Attorney with regard
to offense conduct, adjustments and/or criminal
history under the U.S. Sentencing Guidelines.

Defendant's waiver of rights to appeal and to bring
collateral challenges shall not apply to appeals or challenges
based on new legal principles in First Circuit or Supreme Court
cases decided after the date of this Agreement which are held by
the First Circuit or Supreme Court to have retroactive effect.

This Agreement does not affect the rights or obligations of
the United States as set forth in 18 U.S.C. § 3742(b), and the
U.S. Attorney therefore retains his appeal rights.

7.    Waiver of Hyde Amendment Claim

Defendant is aware that 111 Stat. 2440, 2520 (1997), the so-
called "Hyde Amendment," authorizes courts in criminal cases to
award to certain prevailing defendants attorneys' fees and other
litigation expenses.  In exchange for concessions made by the
U.S. Attorney in this Agreement, Defendant voluntarily and
knowingly waives any claim that he might assert under this
statute based in whole or in part on the U.S. Attorney's
agreement in Paragraph 1 to dismiss Racketeering Acts 21, 22, and
26 through 35, and substantive Counts Ten, Twenty-Seven, Twenty-
Eight and Thirty-Three through Thirty-Eight.

8.    Court Not Bound By Agreement

The sentencing recommendations made by the parties and their
respective calculations under the Sentencing Guidelines are not
binding upon the U.S. Probation Office or the sentencing judge.
Within the maximum sentence which Defendant faces under the
applicable law, the sentence to be imposed is within the sole
discretion of the sentencing judge.  Defendant's plea will be
tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B).  Defendant may
not withdraw his plea of guilty regardless of what sentence is
imposed.  Nor may Defendant withdraw his plea because the U.S.
Probation Office or the sentencing judge declines to follow the
Sentencing Guidelines calculations or recommendations of the
parties.  In the event that the sentencing judge declines to
follow the Sentencing Guidelines calculations or recommendations
of the U.S. Attorney, the U.S. Attorney reserves the right to
defend the sentencing judge's calculations and sentence in any
subsequent appeal or collateral challenge.

5

9.   Civil Liability

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in Paragraph 1 of this Agreement.

10.   Rejection of Plea By Court

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Defendant, this Agreement shall be null and void at the option of the U.S. Attorney.

11.   Breach of Agreement

If, prior to sentencing, the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement, has violated any condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement.  Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement.  Defendant recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea.  Defendant understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents, or objects which may be provided by him to the government subsequent to this Agreement, without any limitation.  In this regard, with respect to any delays occasioned by the plea and purported breach, Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

12.   Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state

6

or local prosecutive authorities.

    13.   <u>Complete Agreement</u>

       This letter contains the complete and only agreement between the parties relating to the disposition of this case.  No promises, representations, or agreements have been made other than those set forth in this letter.  This Agreement supersedes prior understandings, if any, of the parties, whether written or oral.  This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

       If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorney Ernest DiNisco.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: _James B. Farmer_____

JAMES B. FARMER
Assistant U.S. Attorney
Chief,
Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

ERNEST DINISCO
Assistant U.S. Attorney

7

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.


_____
Francis White
Defendant

Date:_____


I certify that Francis White has read this Agreement and that we have discussed its meaning. I believe he understands the Agreement and is entering into the Agreement freely, voluntarily, and knowingly.


_____
Richard Egbert, Esq.
Attorney for Defendant

Date:_____

8